**Upon the Petition of Richard M. FERGU-SON, Appellee, and concerning Bonney K. Ferguson, Appellant.**

No. 3–58953.

Supreme Court of Iowa.

Aug. 30, 1976.

Thomas H. McMurray, Iowa City, for appellant.

Patricia C. Kamath, Iowa City, for appellee.

L. Vern Robinson, Iowa City, for the child.

Heard before MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal requires us to decide which parent of a small girl will best provide for her long-range interests.

On September 2, 1971, Persephone Ann Ferguson was born in California to Richard M. and Bonney K. Ferguson, husband and wife. Both spouses are college graduates, intelligent, and upright. Richard is a candidate for the degree of doctor of philosophy in zoology, with bright prospects. Bonney is a competent homemaker and mother.

A gulf developed between these marriage partners involving intellectual matters in general and religion in particular. Richard's intellectual interests appear broader in scope than Bonney's. As to religion, within the past few years Bonney has embraced completely a religious faith with which she first came in contact in California. The parties are now far apart in matters theological.

Richard became convinced that the schism between him and Bonney adversely affected Persephone's welfare. He commenced the instant dissolution proceeding. Bonney did not want the marriage to end, and clung to the child.

In the dissolution proceeding the parties contested only the issues relating to Persephone, primarily custody. They tried that issue at length before the trial court, with commendable thoroughness and openness.

The trial court had much difficulty deciding the custody issue. After thorough consideration in its decree of the various factors involved, the court concluded that Richard would best minister to Persephone's long-range interests and granted him custody.

In this court Bonney contends that the court's conclusion is wrong, while Richard and the child's attorney claim that the conclusion is right.

The first problem in the appeal relates to religion. Bonney maintains that the trial court in effect decided the case on religious grounds and penalized her for her doctrinal beliefs. On the other hand, Richard claims the court did not base the decision on religion and considered only actual child-care practices in comparing the parents as custodians.

Our reading of the court's decree leads us to believe that rather than basing the decision on religion, the court studiously endeavored to avoid that subject. Nonetheless, Bonney believes that religion did enter the picture, and undoubtedly no finding by us that her faith did not influence the trial court's decree will disabuse her of that conviction.

We need not say in this particular case what role the parties' religions might play in a custody decision if, for example, the evidence showed that the religious practices of one parent were actually inimical to a child's physical well-being. We reach the same result in the present case whether we consider the parties' religions or banish religion from consideration altogether. We thus place religion entirely aside in our deliberation here, and we review the case de novo as required by the Iowa Constitution in cases of this kind. Iowa Const. art. V, § 4; *In re Marriage of Ringus*, 226 N.W.2d 805 (Iowa).

█ The principal problem in the appeal is this: which parent does the evidence show will more effectively minister to Persephone's long-range interests? Our review of the evidence discloses that in this particular situation the result is affected by the decision of *In re Marriage of Bowen*, 219 N.W.2d 683 (Iowa)—no automatic preference is given to the mother.

█ We set forth the various relevant factors in controversies of this kind in the case of *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa). We have placed those factors beside the evidence before us. When under *Bowen* we give the father an even start in the contest and then place the evidence on the scales, we think the balance tends to tip in the father's favor for two reasons.

One reason is that custody in Bonney, the mother, might very well make the child an overly-dependent person. The relationship between Richard and Persephone is quite different from the one between Bonney and Persephone. The father-daughter relationship is of a mature, parent-child kind. While Richard loves the child and spends time with her, he occupies a definite parental role in doing so and endeavors to have Persephone develop her own individuality. The relationship between Bonney and Persephone, however, is not the same; as one witness put it, Bonney "stifles" the child. Certainly Bonney should be allowed to visit the child, but her relationship with the child compared with the father-daughter relationship does indicate that the child would more likely develop into a whole person under Richard's tutelage. A witness appraised the situation thus:

I believe Dick would be a better parent, mainly because he doesn't seem to have as close a relationship, sort of dependent relationship as Bonney did with Persephone, and I think he's set limits more. . . . As far as love goes, both of

them are fairly liberal in the amounts of love they give Persephone, so the main difference is simply that I think Dick has more independent relationship with Persephone and a more adult-like relationship.

The other reason we think the balance tips toward Richard is that with him as custodian, Persephone would have a better chance of substantial contact with both parents. One of the problems in marital dissolution, of course, is the substantial loss of access by the children to one of their parents. During the pendency of this dissolution case Bonney had custody, and while the evidence is in dispute we think it tends to show an inclination on her part to discourage the relationship between Richard and Persephone rather than to encourage its development as fully as possible under the circumstances. The reverse does not appear to be true. Richard would apparently encourage access by Bonney to the child. In Richard's custody, Persephone would more likely continue to have both a father and a mother in fact, so far as possible.

After considering the evidence and placing entirely aside the parties' religious views, we incline to think that Richard should have custody of the child—with liberal visitation rights in Bonney as the trial court decreed. In so holding, we are satisfied that Richard will make the effort necessary to rear the child properly. Perhaps the best description of Richard in the record is by his doctoral adviser:

Q. Would you make an assessment of his moral character at this point? A. I can tell you that he—that the laboratory situation is a very communal situation, and he's basically the most mature person in the laboratory and I would include myself in that assessment, and I find him an extremely moral person. I find that his approach to science is such a rigorous one in which he takes no shortcuts and he takes no shortcuts in terms of courses he takes or what's demanded of him in terms of his responsibilities in the laboratory. By those criteria, I presume that one would consider him a very moral person.

Q. How does he get along and interact with other individuals; with you, with the other people in the lab? A. Very well, very well.

Q. Have you had an opportunity to see him with Persephone? A. Yes.

Q. What did you observe about that relationship? A. I found it a very even relationship; a very even relationship; a very relaxed relationship. . . .

Q. Would you have any hesitation at all in recommending to the Court that it could place a small child in his custody and the child would receive the optimum care? A. None whatsoever.

We think that the result reached by the trial court is right.

Appeal costs to appellee.

AFFIRMED.