In re the MARRIAGE OF Heidi A. LEYDA and Michael D. Leyda.

Upon the Petition of Heidi A. Leyda, Appellee,

And Concerning Michael D. Leyda, Appellant,

Kimberly A. Leyda, A Minor Child, Appellant.

No. 83–1244.

Supreme Court of Iowa.

Sept. 19, 1984.

Cynthia H. Danielson, Mount Pleasant, for appellant Michael D. Leyda.

Richard J. Bell, Mount Pleasant, for appellant Kimberly A. Leyda.

Gary L. Wiegel, Mount Pleasant, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, LARSON, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

In this dissolution decree modification proceeding, the parents contest the legal custody and physical care of their minor daughter. Trial court terminated joint custody, awarding custody and continued physical care to the mother. Upon this appeal by the father and by the child's counsel, we reverse and remand.

The mother, Heidi, and the father, Michael, were married December 23, 1977. Their only child, Kim, was born July 17, 1978. Following Kim's birth, both parents continued employment outside their Mount Pleasant home and Kim was cared for during the day by Michael's parents, June and Bill Leyda.

November 30, 1981, Heidi filed a petition to dissolve the marriage, requesting sole custody of Kim. Michael's answer initially did not contest the proposed custody, but by amendment filed January 12, 1982, he requested sole custody of Kim. This amendment closely followed Heidi's abrupt and clandestine departure to Florida with Kim in early January.

Heidi and Kim returned to Iowa on June 11, 1982. The parties then stipulated for joint legal custody, with Heidi to have physical care of Kim subject to Michael's alternate weekend and holiday visitation rights. The stipulation of agreement incorporated in the November 8, 1982, dissolution decree also provided that Heidi should not remove Kim "from the State of Iowa on a permanent basis unless an application is made by the petitioner for permission and authority to permanently relocate herself and said child, with notice to the respondent."

Following dissolution of their marriage, Michael and Heidi continued in their respective employment. June and Bill, the paternal grandparents, continued to provide day care for Kim. In the spring of 1983, however, after finding bruise marks on Kim's body, a report from June led to a minor and unpublicized child abuse investigation. Heidi's usual unappreciative attitude changed to one of open hostility, exacerbated by Michael's involvement with another woman.

May 19, 1983, Heidi filed application for permission to move permanently to Florida with Kim. June 14, 1983, Michael answered, seeking Kim's sole custody. Heidi then filed a similar sole custody application. Meanwhile, the court had issued an injunction prohibiting Heidi from removing Kim from Iowa before the court ruled.

After a two-day hearing, trial court modified the dissolution decree on September 7, 1983, awarding Heidi sole custody and by implication granting her permission to remove Kim from the state.

Both Michael and Kim's court-appointed counsel have appealed and they join in a written brief.

## I. *Burden of Proof Issue.*

Michael contends trial court proceeded on the erroneous rule "that physical care pursuant to a joint legal custody arrangement automatically became a sole custody award upon termination of joint custody." Trial court at one point clearly did impose on Michael the burden usually allotted to non-custodial parents "to show in some degree a superior claim to physical custody based on his ability to minister, not equally but more, effectively to Kimberly's well-being." At another point in the modification decree, however, trial court observed that "this showing need not be as strong where the parties have had joint legal custody and substantial quantity as well as quality visitations between the child and the non-custodial parent have occurred."

There is no indication that Michael raised this burden-of-proof issue in trial court. Nonetheless, our review is de novo and the proof burden we select may control the future of this child. We cannot be bound in these circumstances by any rule trial court applied; our duties in our own de novo review are to weigh the evidence, properly allocate the burden of proof in conformance with our prior decisions, and arrive at a result that will be in the best interest of Kim.

Of course a parent who does not have physical care of the child but who is armed with a joint custody dissolution decree is benefited when seeking sole custody by the inference he or she has met the joint custody tests of *In re Marriage of Burham*, 283 N.W.2d 269, 274 (Iowa 1979). *See* Iowa Code § 598.41 (1983) (amended 1984). Our subsequent decisions, however, make clear that in Iowa the parent who would disturb the child's sole physical care arrangement must carry a burden similar to that imposed on a parent seeking a change of custody.

In *In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983), we noted, "Like custody, the related status of physical care should be quickly fixed and little dis-

turbed." In an opinion filed after the modification decree in this case we wrote:

> A finding that either parent is a suitable legal custodian is an essential predicate to an award of joint custody. Similarly, a finding that one of the parents can minister more effectively to the routine daily needs of the children is an essential predicate to an award of physical care. The significance of an award of physical care should not be minimized. Children are immediately, directly, and deeply affected by the kind and quality of home that is made for them. Courts should not interfere with that status any more readily than with other aspects of the children's legal status.

*In re Marriage of Frederici*, 338 N.W.2d 156, 160–61 (Iowa 1983). In *Frederici* we imposed the burden of proof on the father who did not have physical care of the children, *id.* at 159, despite arguments similar to those raised by Michael in this appeal.

■ In considering the record before us, we have imposed on Michael the burden to establish by a preponderance of evidence that conditions since the dissolution decree was entered have so materially and substantially changed that Kim's best interest makes it expedient to transfer her sole custody and care to him. *See Frederici*, 338 N.W.2d at 158.

In our review we have given weight to the findings of the trial court, but of course we are not bound by them. The controlling consideration must be the best interest of Kim. *See In re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982).

II. *Custody and Care Issue.*

■ We have considered the evidence in light of certain factors we consider controlling, taken from the criteria found in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), and Iowa Code section 598.-41. We have studied what the testimony tells us about "[t]he characteristics of each parent, including age, character, stability, mental and physical health," *Winter*, 223 N.W.2d at 166, as well as "[w]hether each parent can support the other parent's rela-tionship with the child," Iowa Code section 598.41(3)(e).

It is abundantly clear that Heidi has demonstrated she lacks the maturity to serve as a good role model for Kim. Further, she is adamant in seeking to deprive Kim of all meaningful relationship with her father.

Heidi was reared in Florida and her separated parents and siblings live there. It was understandable that she desired to return there when the marriage of these parties deteriorated. She provides no excuse, however, for failing to notify Michael of her departure. Upon arrival at her mother's home, she effectively cut Kim off from communication with her father for approximately six months. Heidi's mother changed her telephone to an unlisted number. Heidi's father, in whose home she spent part of the time, has a history of drinking problems. He was without a telephone. Michael received no cards, letters or telephone calls. Heidi testified she returned to Iowa "for [her] divorce decree," not to allow Kim to visit her father.

Of course, the dissolution decree provided that Heidi could not remove Kim from Iowa on a permanent basis, absent permission following notice and hearing. Even though she stipulated to joint custody and liberal visitation, Heidi obviously intended to return to Florida. She sent most of Kim's clothes and toys to Florida and did not seek their return. She moved with Kim into a girl friend's apartment in Mount Pleasant, awaiting trial court's permission to move to Florida.

It says something about the parental grandparents, June and Bill, that they continued to provide free day care for Kim following the dissolution, as they had since she was a baby except for the six-month period she was in Florida. Bill helped Heidi fix her car and they offered her transportation. This long and loving relationship with Kim makes June's reaction more understandable when, in the spring of 1983, she observed a cigarette burn on Kim's body, and bruises Kim said were

made by Heidi with a wooden spoon. Although Heidi testified that a social worker found no abuse, she admitted to Kim's counsel that she threatened Kim that "Mr. Spoon will get you." The cigarette burn, Heidi explained, occurred when Kim backed into her cigarette.

It is also an indication of Heidi's immaturity that she gave no weight to June's legitimate concern, but reacted with unwarranted hate and invective, all expressed to or before Kim. Heidi admitted she told Kim that the Leydas were "evil," "retards" and "liars," and also could have told her they were the "devil." She denied making middle-finger obscene gestures at Michael when she met him on the street, stating she intended the gesture for his girl friend.

Heidi's response to Marge, the girl friend Michael started dating at Christmas 1982 and cohabited with commencing June 1, 1983, was a repeated stream of uncivilities, hostilities and obscenities, often vocalized and demonstrated in front of Kim, who was left crying and distraught.

This court has long recognized the need for a child of divorce to maintain meaningful relations with both parents. *See Bolin*, 336 N.W.2d at 445 (father's conduct in trying to alienate child from his mother found to "reflect adversely on his custodial ability"); *Burham*, 283 N.W.2d at 276 ("In fixing custody in the past, this court has considered the willingness of each party to allow the children access to the other party."); *Petition of Ferguson*, 244 N.W.2d 817, 819 (Iowa 1976) ("balance tips toward [father]" because with him child would have a better chance of substantial contact with both parents). It has been steadfast in condemning parents who disappear with their children and deny their ex-spouses parental contact. *See In re Marriage of Key*, 336 N.W.2d 422, 423 (Iowa 1983) (finding "insensitive, calloused and selfish" a non-custodial mother's kidnapping of her son); and *Spotts v. Spotts*, 197 N.W.2d 370, 372 (Iowa 1972) (condemning a mother's removal of herself and her children to a new address unknown to the father).

The provisions of Senate File 2163, 70th General Assembly, 1984 Regular Session, amended section 598.1 of the Code, by adding a new subsection:

6. "Best interest of the child" includes, but is not limited to, the opportunity for maximum continuous physical and emotional contact possible with both parents, unless direct physical or significant emotional harm to the child may result from this contact. Refusal by one parent to provide this opportunity without just cause shall be considered harmful to the best interest of the child.

1984 Iowa Legis.Serv. 42 (West). This provision was not applicable at the time of this hearing, but it codifies our decisions that emphasize the importance of the child's physical and emotional contacts with both parents.

Although Heidi allowed Michael to exercise his visitation rights while these modification proceedings were pending, she has sought to obscenely denigrate and deny the emotional relationship between Kim and her father. She purposely has tried to destroy Kim's image of and confidence in Michael. In so doing, Heidi has acted in total disregard of Kim's emotional well-being.

Turning to the stability of the parents, we find Michael better equipped to provide some continuity to Kim's life. At the time of this hearing, he had been employed by the same company for five years. Although Michael had changed residence several times following the dissolution, he was renting a home in the country where Kim had her own bedroom, clothes and toys. Heidi, on the other hand, apparently had held thirteen jobs since 1977 and had lived in eight different homes since 1982.

It is clear from the record that if Michael is granted Kim's care and custody he, Marge and the two grandparents, June and Bill, will form the paternal parenting team. Michael's parents will provide most of the child care for Kim while Michael and Marge are at work. The parenting skills of the older Leydas were not generally challenged at trial. Heidi admitted their rela-

tionship with Kim was "good." Aside from a critical reference to allowing Kim to ride on Michael's motorcycle, the care provided Kim by Michael and Marge likewise was not criticized. At time of trial, Michael continued to be employed from 7 a.m. to 5:30 p.m. four days a week at a local plant, with a $270 per week paycheck.

Marge has completed two years of college and at time of trial was clerking in a local store. Although at trial Heidi attacked Marge's character and conduct, the latter's testimony and the evidence reflect she has a loving, understanding, and sympathic concern for Kim. Marge and Michael have discussed marriage but consider his indebtedness, including litigation expense, an obstacle. Trial court evidently gave great weight to this unmarried status in granting Heidi sole custody. We do not condone the situation and give it serious consideration, but it appears more stable and no more harmful to Kim than Heidi's casual relationships with male friends. *See In re Marriage of Morton*, 244 N.W.2d 819, 822 (Iowa 1976).

Heidi's testimony indicated that if she were permitted to relocate to Florida she would have much closer contact with her parents, twice married to each other and twice divorced, and also with her paternal grandparents and four siblings, all Florida residents. Heidi testified that she had a $200 per week secretarial job waiting for her there. She indicated that she initially would live with her mother and brother in a new three-bedroom house, and would share a bedroom with Kim.

Unlike the trial court, we find this relocation to be motivated in large part by Heidi's driving need to separate Kim from her father, emotionally and physically. On the other hand, we find Michael and his parents have demonstrated no such plan or purpose with respect to Kim's relationship with her mother. We are convinced Kim's best interest would be served by granting her sole custody and care to Michael, with visitation rights to Heidi.

We conclude trial court's decree should thus be modified, and it should further provide as follows:

1. Heidi shall have the physical care of Kim commencing the third full week in June and terminating at the commencement of the third full week in August each year, starting in June 1985.

2. Heidi shall have visitation rights with Kim, alternating each year, over Christmas vacation or spring vacation, commencing with Christmas 1984.

3. In addition, Heidi shall have visitation rights with Kim at reasonable times and places in Iowa.

4. Heidi shall pay Michael, through the office of the clerk of the district court in Henry County, the sum of $25 per week toward Kim's support, commencing October 2, 1984, and on Tuesday of each week thereafter, except during the summer period when Heidi has Kim's care.

5. Heidi shall pay Kim's transportation to Florida for the scheduled visitations, and Michael shall pay the transportation costs for Kim's return.

6. Each party shall be enjoined from making any statement or committing any act that would tend to alienate Kim from the other, and from permitting such conduct by any other person.

We reverse and remand. Upon remand trial court shall enter·a modified decree in conformance with this opinion.

REVERSED AND REMANDED.