# IN THE COURT OF APPEALS OF IOWA

No. 14-1652
Filed August 19, 2015

IN RE THE MARRIAGE OF SCOTT MICHAEL TAYLOR
AND MICHELE R. TAYLOR,

Upon the Petition of
SCOTT MICHAEL TAYLOR,
    Petitioner-Appellee,

And Concerning
MICHELE R. TAYLOR, n/k/a
MICHELE R. WULFF,
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

    A former spouse appeals a modified dissolution decree, challenging physical care, visitation and child support. **AFFIRMED.**

    Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.

    Francis L. Goodwin of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, for appellee.

    Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, J.**

Less than two years after their divorce, Michele Wulff, formerly known as Michele Taylor, filed a petition to modify the visitation provisions of the decree; Scott Taylor filed a counterclaim for modification of child support; and Michele amended her petition to request a change in physical care. The district court declined to modify physical care, formalized the visitation schedule, and ordered Michele to pay child support. Because we agree with the district court that Michelle failed to show a substantial change in circumstances justifying modification of physical care, we affirm on that issue. We also affirm the visitation schedule and child support order.

## I. Background Facts and Proceedings

Michele and Scott married in 1999 and had two children together. C.T. was born 2001 and B.T. was born 2005. The couple separated in 2009, and entered a stipulated dissolution decree with court approval on June 11, 2012. The decree granted the parties joint legal custody with Scott having physical care. The decree did not set a formal visitation schedule, but granted Michele "reasonable rights of visitation at all reasonable times and places as agreed upon by the parties." The decree did not order child support, but stated that either party could petition the court for child support in accordance with the state guidelines if disputes arose.

Michele is employed by an agricultural business and earns $29,484 annually. She remarried in December 2012. Scott is employed by Mibaco, his mother's construction business, where he earns $12.50 an hour. He testified that

he performs bookkeeping and has some managerial responsibilities. Scott remarried in May 2014. Initially, the parties cooperated in visitation and other parenting decisions under the stipulated decree. But their relationship turned contentious in 2014.

On January 23, 2014, Michele filed a petition to modify the original decree. In that petition she requested a change in visitation. On February 7, 2014, the Child Support Recovery Unit filed a notice of intent to modify child support. On February 11, 2014, Michele amended her petition to request primary physical care or in the alternative, joint physical care, visitation, and an amended child support calculation. As part of discovery, Michele's attorney filed a subpoena seeking financial records of Scott's family business, including corporate tax and bank transaction records, as well as financial records related to Scott. The company filed a motion to quash the subpoena, resulting in a hearing before the district court. The court found the subpoena overbroad and unduly burdensome. The court did order the company to produce all financial records related to Scott generated between January and June 2014, but quashed all other requests regarding the subpoena. The court also financially sanctioned Michele's attorney for an "unwillingness to negotiate or accept a less burdensome remedy."

Following a hearing on the amended petition, the district court denied Michele's request for primary physical or joint physical care, modified the

visitation schedule, and reset the child support payment based on a new income calculation. Michele now appeals.[1]

## II.     Scope of Review

The district court hears petitions to modify a dissolution decree in equity, so our review is de novo. *In re Marriage of Quirk–Edwards*, 509 N.W.2d 476, 476 (Iowa 1993); *see* Iowa R. App. P. 6.907. That review enables us to reach our own fact findings, but when considering credibility we defer to the district court judge who has the ability to evaluate the witnesses in person. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989). The children's best interest is the "controlling consideration." *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984). Using the best-interest standard provides us with flexibility to consider "unique custody issues" on a case-by-case basis. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).

## III.    Physical Care

To modify a custody provision of a dissolution decree, the petitioning party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests require the requested modification. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The changed circumstances must not have been contemplated by the court when the decree was entered, must be more or less permanent, and must relate to the welfare of the children. *Id.* A parent seeking

---

[1] On appeal, Michele challenges the imposition of sanctions against her attorney. Because the supreme court denied her petition for writ of certiorari on October 2, 2014, we decline to address that issue.

to take custody from the other must prove an ability to minister more effectively to the children's well-being. *Id.* The courts have created this heavy burden to promote stability in the lives of children with divorced parents. *Id.* "[O]nce custody of children has been determined, it should be disturbed only for the most cogent reasons." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

Michele argues there have been four substantial changes since entry of the original decree. First, Scott remarried and Michele alleges his new wife has interfered with their ability to co-parent. She also alleges the children have conflicts with Scott's new wife. Second, she claims Scott travels out of town more for business. Third, she argues Scott is unwilling to facilitate therapy for the children, despite professional recommendations the children engage in therapy. Fourth, she argues Scott has been limiting her visitation with the children since his remarriage. She contends these changes require awarding the parties joint physical care or placing the children in her physical care.

Upon our de novo review of the record, we find Michele has not proven a substantial change in circumstances warranting either modification of physical care. We turn first to the allegations concerning Scott's new wife. Usually, one parent's remarriage in itself does not constitute a substantial change in circumstances. *In re Marriage of Downing*, 432 N.W.2d 692, 695 (Iowa Ct. App. 1988). But we do consider new relationships. *Id.* We do not find the stepmother's interference alleged by Michele rises to the level of a substantial change in circumstances not contemplated at the time of the original decree. The strain on the relationship between Scott and Michele is not uncommon when

parties remarry. The record does not show that any conflicts the children have with their stepmother undermine the physical care arrangement with their father.

Second, the record does not support Michele's contention that Scott's job is requiring more out-of-state travel. Scott testified that if his mother asked him to be gone frequently for the construction business, he would "find other employment." Michele did not show Scott's work demands constituted a material and substantial change in circumstances.

Third, any difference of opinion the parties have concerning therapy for the children does not constitute a change in circumstances warranting modification of physical care. The record showed the children were doing well in school and their activities. Scott has not interfered with Michele's decision to take the children to family counseling or to see a school counselor.

Fourth and finally, we do not find that any limitations Scott placed on Michele's visitation constituted a substantial and material change in circumstances justifying a change in physical care. Scott alleges when Michele had the children for visitation on Tuesday and Thursday nights they did not complete their homework and did not have time to wind down before bed. Michele pointed to her son's testimony that when he needs his father's help with homework Michele drops him off early. We find the visitation controversy was appropriately addressed by the district court's decision to set a formal visitation schedule to assure Michele's time with the children, rather than to change the physical care arrangement.

**IV.    Visitation**

To modify the visitation provisions of a dissolution decree, a parent must show a material change in circumstances since the decree and that the requested alteration to visitation is in the best interest of the children. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). This burden is less demanding than seeking a change in a custodial provision of the decree. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Salmon*, 519 N.W.2d at 96 (citing Iowa Code section 598.41(1) (1993)).

The original decree in this case did not include a visitation schedule. It relied on the parties' mutual agreement to Michele's visitation rights "at all reasonable times and places as agreed upon by the parties. If the parties are unable to agree, either may ask the Court to set reasonable visitation." As both parties now recognize the need for a formal schedule, we agree with the district court's decision to modify the decree in this respect.

Scott and Michele submitted separate visitation schedules. The court entered its own schedule, which included every other weekend with Michele and one midweek visitation night from after school to 8:30 p.m.

Michele now argues the court erred in not selecting her schedule. Specifically, she asks for an additional mid-week visit, additional weekend visitation, additional summer visitation, and the right of first refusal. Michele also

asserts the district court's visitation order was based on factual findings that were inconsistent with the record.

We recognize the district court's reference to the parties living "some distance" apart does not reflect the testimony that Michele now lives only two miles away from Scott. But even when we consider the parents' close geographic proximity in our de novo review, we believe the visitation schedule set by the district court is in the children's best interests. *See* Iowa Code § 598.41(1)(a). The schedule allows the children the certainty of a consistent and increased amount of time with Michele. The visitation schedule is also consistent with C.T.'s testimony that he was willing to spend time with both parents. We do not believe that adding another day of midweek visitation would benefit the children. By all accounts, they are thriving on the routine observed in Scott's home and another school night away from that structure could detract from their positive focus.

Finally, we address Michele's request for the right of first refusal. The phrase "right of first refusal" in our case law means the custodial parent would be required to offer the non-custodial parent the opportunity to care for the children when the custodial parent was unavailable to provide supervision for an extended period before seeking a third-party child care provider. *See, e.g.*, *In re Marriage of Klemmensen*, No. 14-1292, 2015 WL 2089699, at *3 (Iowa Ct. App. May 6, 2015) (citing *In re Marriage of Lauritsen*, No. 13–1889, 2014 WL 3511899, at *3 (Iowa Ct. App. July 16, 2014)). In this case, Michele asks for the following provision: "[w]hen either parent cannot care for the children for more

than 12 hours and it is their scheduled parenting time, they must contact the other parent first to care for the children." Michele claims first refusal is in the best interest of the children because it maximizes the physical and emotional contact between the parents and the children. She also claims a first-refusal provision would protect the children from negative comments she alleges Scott's mother makes about Michele.

With Scott and Michele struggling to cooperate and communicate, we find it would not be in the children's best interest to require a right of first refusal. Moreover, the record did not reveal that Scott had any standing work commitments that would require him to place the children in the care of a third party for any significant length of time. We agree with the district court's decision not to include a right-of-first-refusal provision in the visitation schedule.

## V.    Child Support

The court ordered Michele to pay $675 a month in child support. The court reached this calculation by using the annual incomes reported by Michele and Scott, as well as imputing an additional $2900 a year to Scott based on financial benefits from his employer Mibaco—the family business.

Michele asks us to remand for a new trial on the calculation of child support due to Scott's inconsistent testimony about his income. Michele claims the court should have considered the assistance Scott received from his mother. She claims Scott's housing costs should be included in the court's determination of "other income." Michele also argues she was unable to discover the true

amount of Scott's compensation because the district court quashed her subpoena for Mibaco's financial records.

We find the child support determination to be accurate based on the evidence presented. Further, we find the district court properly handled Michele's requests for information regarding Mibaco's finances. The court acknowledged the benefits Scott received from working for his family's company in calculating his income. The determination included the payment of various personal expenses, including utilities bills and costs of a car. The court found Scott's housing was not provided by the company but personally by his mother. Support available to Scott from his family was not a factor the district court was required to consider in setting the child support award. *See In re Marriage of Drury*, 475 N.W.2d 668, 672 (Iowa Ct. App. 1991). The child support payment shall remain as entered by the district court.

## VI. Appellate Attorney Fees

Both sides ask for appellate attorney fees. These are not a matter of right, but rest in our discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). In arriving at our decision, we consider the parties' needs, ability to pay, and the relative merits of the appeal. *Id.* We find both parties have roughly the same ability to pay. Because Scott is victorious on appeal we believe he is entitled to reasonable attorney fees.

Scott has not provided an affidavit of attorney fees with documentation to support his request. We remand to the district court to enter judgment against Michele in a reasonable amount. *See, e.g., Markey v. Carney*, 705 N.W.2d 13,

26 (Iowa 2005) ("[U]nder our current practice, the issue of appellate attorney fees is frequently determined in the first instance in the district court because of the necessity for making a record." (quoting *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.*, 545 N.W.2d 526, 528 (Iowa 1996))).

Costs shall be assessed equally between the parties.

**AFFIRMED.**