# IN THE COURT OF APPEALS OF IOWA

No. 22-1791
Filed July 26, 2023

**AARON J. CONNELL,**
       Plaintiff-Appellant,

**vs.**

**EMILY J. BARKER,**
       Defendant-Appellee.
_____

       Appeal from the Iowa District Court for Fremont County,
Gregory W. Steensland, Judge.


       A father appeals a child custody decision awarding physical care of the
parties' child to the mother. **AFFIRMED AS MODIFIED.**


       Amanda Heims, Council Bluffs, for appellant.

       Elizabeth Kellner-Nelson of Kellner-Nelson Law Firm, PC, West Des
Moines, for appellee.


       Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Aaron J. Connell appeals, challenging the physical care provisions of the decree entered August 31, 2022, regarding his child, L.L.C.B. The decree awarded physical care to the child's mother, Emily J. Barker, and set forth scheduled visitation for Aaron. Aaron also argues that if physical care remains with Emily, then we should impute additional income to Emily for the calculation of child support. Emily requests that we order Aaron to pay her appellate attorney fees. Having reviewed the record, we find the district court's decision was equitable with respect to placement and child support. We modify the court's visitation schedule and decline to award appellate attorney fees.

## I. *Background Facts and Proceedings.*

Aaron and Emily never married but have one child together, who was born on March 1, 2021. At the time of their child's birth, Emily and Aaron were eighteen and nineteen years old, respectively. Emily is enrolled in online college courses, while Aaron is an HVAC apprentice. Emily testified that she recently started her own business selling makeup online and has yet to earn income from this venture. Emily lives with her mother in Hamburg, Iowa, and Aaron lives with his parents in Nebraska City, Nebraska. They are approximately twenty minutes apart.

Aaron and Emily's romantic relationship was tumultuous, and their co-parenting relationship has continued in this manner. Emily accused Aaron of having a drinking problem and a temper. During their relationship, the couple stayed in constant contact and routinely found themselves in dispute. When apart, Aaron wanted to know Emily's location and insisted that her phone's location feature be activated. Shortly after learning they were pregnant, Emily and Aaron

ended their romantic relationship but continued to see each other often. Aaron was present when L.L.C.B. was born and cut the umbilical cord. Emily alleges that Aaron displayed a temper at the hospital, and she chose not to add him to the birth certificate. Emily told Aaron that he might not be the child's father but has since explained that she said it to try to get Aaron to back off.[1]

On March 6, Emily texted Aaron about him coming over to see the baby at her home. Emily thereafter advised Aaron that he could only see the child at Emily's home or he would need to take her to court. On March 16, Aaron filed the underlying petition to establish custody and visitation. In May, the court entered a temporary order awarding the parents joint legal custody but granting physical care to Emily and affording Aaron visitation every other weekend. Aaron's visitation was ordered to be exercised in his parents' home so that he could have the assistance of his parents. In July, Emily filed petitions in Iowa and Nebraska alleging that Aaron sexually assaulted her and caused L.L.C.B.'s conception. Both petitions were dismissed. Aaron maintains that he and Emily had unprotected sex on multiple occasions and took conscious efforts to conceive a child.

The parties each submitted several affidavits from individuals vouching for their character. They also supplied numerous exhibits, such as text messages and social media posts, reflecting their contentious relationship. The court appointed Amy Garreans to serve as a child and family reporter in this case and tasked Ms. Garreans with obtaining information about the parties, interviewing them, and

---

[1] A paternity test confirmed that Aaron is the father of L.L.C.B. The court ordered the child's birth certificate be amended to incorporate Aaron's surname and recognize him as the legal and biological father.

making recommendations regarding parenting time. Ms. Garreans recommended that Aaron be awarded physical care, primarily because she was concerned about Emily's unwillingness to support the child's relationship with Aaron. She recommended against shared physical care due to the contentious nature of the parents' relationship.

Ultimately, the district court granted joint legal custody to the parents but awarded physical care to Emily. The court scheduled Aaron's visitation to take place every other weekend, as well as on Wednesday evenings, and also set forth an alternating holiday schedule. The court ordered Aaron to pay child support to Emily in the sum of $490.21 per month. The underlying proceedings also included a contempt action against Emily for withholding visitation from Aaron. The district court found Emily in contempt and ordered her to serve thirty days in jail. However, the court suspended the sentence for one year and ordered that the contempt could be purged if Emily follows the terms of the decree. Aaron filed a timely appeal as to physical care and child support.

## II.    Review.

Our review of custody proceedings for a child born out of wedlock is de novo. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). We give weight to the district court's factual findings and credibility determinations, though we are not bound by them. *Id.*; Iowa R. App. P. 6.907. "Prior cases have little precedential value, except to provide a framework for analysis, and we must base our decision on the particular facts and circumstances before us." *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

### III. Discussion.

#### A. Physical Care.

Aaron argues the district court should have ordered shared physical care of the minor child, or in the alternative, awarded physical care to Aaron or at least granted him additional parenting time. The court considers several factors when determining whether to award joint physical care: (1) approximation, which focuses on historic patterns of caregiving for the child involved, (2) the ability of the parents to communicate and show mutual respect, (3) the degree of conflict between the parents, and (4) the degree to which the parents are in general agreement about their approach to daily matters. *In re Marriage of Hansen*, 733 N.W.2d 683, 699 (Iowa 2007). These factors are not exclusive or necessarily determinative. *Id.* Having reviewed the record, we find the parties' history generally reflects an inability to communicate and show mutual respect, as well as a significant degree of conflict even as to daily matters. Therefore, we conclude joint physical care is not appropriate and turn to the question of who should be awarded physical care.

In making this decision, Aaron specifically requests that we reverse the district court's finding that Emily was historically the primary caretaker of the child. We understand Aaron's point that it was not his choice for Emily to assume the role of primary caretaker leading up to trial and that he took on as much involvement as Emily and the court allowed. This understanding does not change the facts of the case but does inform the weight we afford this detail. After all, the general preference for continuity does not dictate that the historical primary caretaker must remain the custodial parent. *See In re Marriage of Decker*, 666 N.W.2d 175, 178 (Iowa Ct. App. 2003).

As noted earlier, we give weight to the trial court's factual findings, particularly with respect to the credibility of witnesses. The trial court had the opportunity to observe the witnesses and concluded physical care should be awarded to Emily. We agree.

> Physical care issues are not to be resolved based upon perceived fairness to the [parents], but primarily upon what is best for the child. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*Hansen*, 733 N.W.2d at 695. Despite ruling in her favor, the district court expressed significant concerns about Emily's parenting:

> She may well be described as a "helicopter mom". She comes very close to obsessing over her relationship with her daughter. She testified that she spends all day everyday with [the child] and doesn't want her spending time with anyone else or going to a daycare of any kind. Her devotion to her daughter is well-intended, but clearly excessive.
> . . . .
> This Court finds that Emily can, in fact, as indicated in Ms. Garreans's Report and testimony be demanding, unrelenting, accusatory, and manipulative.

We share these concerns but likewise conclude that placement with Emily will support the child's physical and mental health. While both parents have their shortcomings, the decree represents an implied credibility finding in favor of Emily, which we do not find occasion to disturb.

At the time of the final trial, Aaron had not yet parented the child on his own. L.L.C.B. was only one year old and had been in her mother's care for almost all of her life. Our affirmation of the district court's determination of the custody award should not be read to condone some of Emily's behaviors exhibited during the pendency of the case. Emily assured the court that going forward she will abide

by the court order. We recognize the importance of a child maintaining meaningful relationships and substantial contact with both parents. *See In re Marriage of Leyda*, 355 N.W.2d 862, 866 (Iowa 1984). In fact, we are directed to "consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." Iowa Code § 598.41(1)(c) (2021). "When one parent's obduracy makes joint custody unworkable, the trial court in a modification proceeding may find the child's best interests require sole custody in the other parent." *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983).

At this time, Aaron also requests increased visitation but does not offer a proposed schedule or other specific logistical details. Upon careful consideration, we modify the schedule set forth by the district court such that Aaron's Wednesday evening visitation shall extend overnight, with the child returned to Emily in the morning by 7:30 A.M. We also modify the decree's award of summer visitation to include two weeks of uninterrupted visitation with Aaron in August in addition to that set forth for June and July. We remind the parties that the court-ordered visitation schedule is the minimum, and additional visits may occur as may be mutually agreed to by the parties. *In re Marriage of Bevers*, 326 N.W.2d 896, 899 (Iowa 1982). We affirm the district court's physical care determination and visitation schedule as modified.

*B. Child Support.*

Aaron argues we should impute additional income to Emily for purposes of calculating child support. The district court imputed Emily's annual income to be $15,131.79. Aaron points out that this amount corresponds approximately to

minimum wage but is even less than Emily's rate of pay when she was in high school and earned $8 per hour. He argues Emily is underemployed because she should be able to find a higher-paying job. Aaron requests we impute Emily's income at $12 per hour for forty hours per week. We decline to do so.

Emily is a full-time college student endeavoring to earn minimum wage through an online business. We are optimistic Emily's studies will lead to more gainful employment in the future and do not believe she should be held to a higher standard prematurely. *See In re Marriage of Yazigi and Nahra*, No. 13-1553, 2015 WL 1046129, at *3 (Iowa Ct. App. Mar. 11, 2015) (concluding the district court did not err in imputing minimum wage income to a mother enrolled in college). Moreover, Aaron has not offered evidence to demonstrate that Emily actually earns a higher income than the amount already imputed to her. *See In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010) (referencing the district court's decision during an earlier proceeding in the case not to impute any income to a parent enrolled in college full-time, "other than what she will actually earn"). Accordingly, we affirm the district court's order with regard to Emily's income.

*C. Attorney fees.*

Emily requests that Aaron be ordered to pay her appellate attorney fees for defending the district court's decision on appeal. An award of attorney fees is a matter of our discretion and not merely a matter of course. *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). "We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal." *In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa 1999). Given the financial

positions of the parties and merits of the arguments on appeal, we decline to award appellate attorney fees to Emily.

**AFFIRMED AS MODIFIED.**

Schumacher, P.J., concurs; Buller, J., specially concurring.

**BULLER, Judge.** (specially concurring)

I reluctantly concur in affirming the custody ruling, agree with the expansion of Aaron's parenting time, and have no disagreement with the majority's child-support analysis. I write separately to express my concern over the difficult position the appellate courts are put in when the district court does not make express credibility findings or explain why it is rejecting what appears to be credible testimony in favor of other evidence.

The Child and Family Reporter (CFR) in this case, a Council Bluffs attorney, submitted a written report described by the district court as "thorough and well-written." I agree with that description. The CFR also withstood significant attacks by Emily's trial counsel, which the district court described as "unwarranted." I agree with that too. The district court described the CFR's testimony overall as "compelling and helpful to [the] Court," which is a view I share as well. Yet the district court ultimately rejected the CFR's recommendation to place physical care with Aaron, with little explanation why.

The explanation does not lie in a finding that Emily testified credibly at trial. As the majority notes, both the district court and this court found significant deficits in Emily's parenting and other behavior. It is reasonable to conclude from the record that Emily made false allegations of criminal conduct against Aaron in a bid to limit his access to the child. The CFR's testimony also credibly highlighted significant problems with Emily's manipulative behavior, dishonesty, and willingness to do anything she can to tear Aaron down and bias witnesses and the court against him. For example, Emily accused the CFR of asking her an inappropriate question during the interview, but the CFR had recorded the

exchange between herself and Emily, and the question was never asked. The CFR also detailed how Emily was "very confrontational," "not cooperative," and refused to consent to the release of the child's records. Emily's concerns were parroted by counsel, who filed a motion to disqualify the CFR. The district court summarily denied the motion to disqualify, apparently finding it baseless. Last, and perhaps most damning to any claim the district court found Emily credible, the court found her in contempt beyond a reasonable doubt, necessarily finding a willful violation of a court order. Emily's credibility cannot explain the district court's ruling.

Nor can the explanation for rejecting the CFR's recommendation be found in the district court's concerns about Aaron as a parent. To the contrary, the court found "Aaron to be perfectly capable as a parent in this case." Consistent with that finding, the CFR testified that she did not have any concerns about Aaron's cooperation or parenting skills, and Aaron provided consent for release of the child's records.

So what is the basis for the district court rejecting the CFR's recommendation and instead awarding physical care to Emily? The only overt factor identified in the ruling is Emily's historical caregiving, and the weight that factor is owed is limited for the reasons identified by the majority (namely that Aaron parented as much as Emily or the court allowed). We are left with what the majority describes as an "implied credibility finding" in favor of placing physical care with Emily. I cannot fault the majority with this description, though it has scant support in the actual text of the district court's ruling. At most, the "implied credibility" determination lives within this sentence of the ruling, which was perhaps

intended to shed light on the departure from the CFR's report: "While this Court has a great deal of respect for the recommendation made [by the CFR], this Court believes that the totality of the circumstances and the best interests of [the child] require joint legal custody with Emily having physical care." In my view, this offers the illumination of a flickering street-lamp down the street on a stormy night. The majority is likely right that an implied credibility finding was made, but I am hard pressed to know the reasoning or if the finding was based on considerations we actually owe deference, like the trial court's ability to observe in-court testimony.

I strongly encourage district courts to make express credibility findings in the future, with an explanation of the finding and its basis. It does a tremendous disservice to leave the appellate courts and litigants wondering why a trial court, required to make written fact-findings, chose to believe one witness over another. The appellate courts cannot offer appropriate deference to credibility findings, while simultaneously engaging in de novo review, if we cannot distinguish between credibility findings and a mixed analysis of law and fact.

Reading this cold record, I found the CFR credible and Emily decidedly not. If I were reviewing this transcript as trial judge and fact-finder, I would likely award physical care to Aaron. Yet given the limited role of our appellate courts, I must decline to second-guess the credibility findings of the district court, even in the spartan—or "implied"—fashion they are made here. I therefore reluctantly concur.