**IN THE COURT OF APPEALS OF IOWA**

No. 24-0952
Filed April 23, 2025

**MATTHEW J. JOHNSON,**
        Petitioner-Appellant,

**vs.**

**BRITTNEY M. HOPP,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

A father appeals the district court's order denying his petition to modify the parties' custodial decree regarding physical care of their minor child. **AFFIRMED AND REMANDED.**

J. Joseph Narmi, Council Bluffs, for appellant.

Adam J. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for appellee.

Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

Matthew Johnson and Brittney Hopp are the parents of a child born in 2015. They have never been married to each other. In 2018, Matthew filed a petition to establish custody and visitation regarding the child. The parties resolved the case by entering a stipulation, which the district court incorporated into a decree. At the time the decree was entered, Matthew lived in Council Bluffs, Iowa, and Brittney lived in Wahoo, Nebraska. The stipulated decree gave the parties joint legal custody of the child, with Brittney having physical care. Matthew was granted visitation generally every other weekend and alternating weeks during the summer. He was also ordered to pay child support.

Since entry of the decree, Brittney married and had three children with her husband. In 2023, Brittney, her husband, and her four children moved to Leon, Iowa—a location approximately 152 miles from Matthew's home in Council Bluffs. Matthew filed this action seeking to modify the decree to place the parties' child in his physical care. Brittney opposed modification of the physical-care provisions of the decree and counterclaimed seeking an increase in Matthew's child support. Following trial, the district court found that Matthew had established a substantial change of circumstances but failed to prove he can provide superior parenting. As such, the court declined to modify the physical-care provisions of the decree but did modify the summer-visitation provisions of the decree to allow Matthew to exercise his summer time visitation in a six-week block rather than in alternating weeks if he so chooses. The court also granted Brittney's counterclaim and increased Matthew's child-support obligation.

Matthew appeals. He contends the district court erred by not modifying the decree to grant him physical care of the child.[1] Brittney asks us to affirm the district court's ruling and require Matthew to pay her appellate attorney fees.

Because the parties were never married to each other, Iowa Code chapter 600B (2023) governs this modification appeal. We apply the same legal framework to custody and visitation matters involving parents who were never married as we do to those matters when the parents had been married. *See* Iowa Code § 600B.40(2) (cross-referencing section 598.41). Proceedings resolving custody issues of unmarried parties are in equity, so our review is de novo. *See Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). With de novo review, we are not bound by the district court's fact findings, but we give them weight, especially as to witness credibility. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). The child's best interest is the "controlling consideration." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (quoting *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984)).

---

[1] In the single issue heading in Matthew's brief, in addition to claiming the district court erred by not granting him physical care, Matthew refers to a claim that the district court erred by granting Brittney's counterclaim to increase Matthew's child-support obligation. However, Matthew does not make any argument as to how he contends the district court erred, nor does he cite any authority supporting a challenge to the child-support modification. We recognize that this may be because Matthew's challenge to the child-support modification is tied to his challenge to the physical-care determination—meaning it is possible Matthew is only claiming his child-support obligation should be eliminated if he were to be granted physical care. But, to the extent Matthew is challenging the upward modification of his child-support obligation if Brittney retains physical care, we deem his challenge waived or forfeited. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) ("A party forfeits an issue on appeal when the party fails to make an argument in support of the issue."); Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

As the party seeking modification of physical care, Matthew has the burden to prove by a preponderance of the evidence (1) a substantial change in circumstances and (2) that he has a superior ability to minister to the needs of the child. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). This is a "heavy burden," because once physical care of a child has been fixed, we will disturb the physical-care arrangement only for the most cogent reasons. *Id.*

There is no dispute that Matthew proved a substantial change in circumstances, as Brittney's move resulting in a 152-mile gap between the parties' residences created a circumstance that was not contemplated by the court when the decree was entered, was more or less permanent rather than temporary, and affected the welfare of the child. *See id.* The fighting issue is whether he proved a superior ability to minister to the child's needs. The district court found he did not, and we agree.

Matthew admitted in his testimony that Brittney is a good mother, and he did not believe he was better able to meet the child's needs. This admission alone may be enough to end the discussion, but there is other evidence supporting Matthew's admission. The district court summarized that other evidence nicely in this assessment with which we agree following our de novo review:

> The child has historically spent more time with Brittney than with Matthew, although in the past two years, the time with Matthew has increased. Brittney has been the parent primarily responsible for scheduling appointments with the doctor and dentist and taking the child to those appointments. Brittney has been responsible for overseeing the child's education, while Matthew's role has been less a direct relationship with school staff and more a supporting role. The parties' communication has waxed and waned, with Matthew admittedly venting his anger and frustration with Brittney's move inappropriately at times.

The evidence showed that Matthew is committed to [the child]'s welfare. He loves his son and wants to spend an equal amount of time with him. He is a good father and a good provider. [The child] enjoys his time with his father and expresses his love for him and his desire to be with him. [The child] has benefited from having a devoted father in his life. However, the evidence also showed that Brittney has consistently cared for the child and taken the lead role in his educational needs and his medical and dental needs. The child has a good relationship with his younger siblings in Brittney's home. He has made a good adjustment to the new home and school. The court found her testimony that she wanted Matthew and [the child] to continue to have a strong relationship to be credible. She has not denied Matthew any scheduled parenting time since her move.

Under these facts and circumstances, the court concludes that Matthew has failed to demonstrate that he can provide superior parenting to the child if he was awarded physical care.

To this accurate assessment made by the district court, we highlight a few additional pieces of evidence that contribute to our finding that Matthew has not met his burden. Brittney is a stay-at-home parent, providing her with the flexibility to more easily meet the child's needs and have the child in her care without relying on others. In contrast, Matthew works full-time, including periodic weekend "on call" time, and would need to seek help from third parties to help care for the child. While we do not fault Matthew for working full time or hold it against him, the parents' respective employment situations impact the quantity of time each has available to care for the child, and the amount of available time is a factor to consider here.

Additionally, Matthew made no noticeable effort to try to explain why the child would be better off in his care. Instead, his testimony focused on the perceived unfairness to himself stemming from the move. As noted above, Matthew vented anger and frustration at Brittney due to the move, and this is understandable to a degree. But only to a degree. What troubles us is the

vindictiveness and immaturity demonstrated in Matthew's testimony, even though he suggested in his testimony that he had put his anger and frustration behind him. It is clear from his testimony that his rancor is not a thing of the past, and it is not something that he intends to keep to himself. Besides threatening to file another modification action if he lost this one, when asked if he would continue to coparent with Brittney and her husband because the child is important to him, Matthew responded, "If he lived down there [referring to Leon, Iowa], no." And when asked why he was not talking to Brittney about how the child is doing in school, Matthew referred to his anger toward Brittney, and stated, "[I]t's always going to be like this because, like, I'm going to be a little dickhead about it if they stay down there so— I will never be cool about it." Also, after expressing strong opinions about the quality (or lack thereof, in his opinion) of many different school districts throughout Iowa and Nebraska, he was asked "[w]hat is wrong with [the child]'s current school [in Leon]?" Matthew responded that he did not know because he didn't care about the quality of the child's school because he was not involved with Leon. These examples from Matthew's testimony convince us that Matthew is unable to put the child's interests ahead of his own.

We agree with the district court that Matthew failed to meet his burden of proving he has a superior ability to minister to the child's needs. *See id.* As a result, we affirm the district court's decision to deny Matthew's request to modify the physical-care provisions of the original decree.

We turn to Brittney's request for appellate attorney fees. In assessing attorney-fee claims under Iowa Code chapter 600B, we apply the same standards as with attorney-fee claims involving divorcing parents. *See Markey v. Carney*,

705 N.W.2d 13, 25–26 (Iowa 2005). However, in an action such as this governed by chapter 600B, attorney fees can only be awarded to the prevailing party. Iowa Code § 600B.26. Appellate attorney fees can be awarded in modification actions. *Christy*, 878 N.W.2d at 469. An award of appellate attorney fees is not a matter of right; instead the decision is within our court's discretion. *Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017). To determine whether to award appellate attorney fees, we consider the needs of the requesting party, the other party's ability to pay, and the relative merits of the appeal. *Id.*

Brittney is eligible for appellate attorney fees because she is the prevailing party on appeal. *See* Iowa Code § 600B.26. Using the same undisputed income figures the district court used to calculate child support—which included imputing income to Brittney even though she is currently not working outside the home—Brittney has the need for an appellate attorney-fee award and Matthew has the ability to pay to a degree. Based on the relevant considerations, we conclude that Matthew should pay Brittney's appellate attorney fees in a reasonable amount not to exceed $6000. Because Brittney did not file an attorney-fee affidavit, we are unable to determine a reasonable amount of such fees. Accordingly, we remand to the district court to determine the reasonable amount of Brittney's appellate attorney fees and to order Matthew to pay that amount, but the amount ordered cannot exceed $6000. In determining the reasonable amount of Brittney's appellate attorney fees, the district court shall not consider any time spent or fees incurred for Brittney filing a corrected brief after her first brief was struck for failure to comply with the rules of appellate procedure.

**AFFIRMED AND REMANDED.**