In re the MARRIAGE OF Douglas E. GRATIAS and Cyndra Jo Gratias.

Upon the Petition of Douglas E. Gratias, Petitioner-Appellant/Cross-Appellee,

And Concerning Cyndra Jo Gratias, Respondent-Appellee/Cross-Appellant.

No. 85–1713.

Court of Appeals of Iowa.

March 31, 1987.

Ray Sullins of Riemenschneider, Rydell & Smalley, Des Moines, for appellant.

Roger J. Kuhle, Des Moines, for appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ., but considered en banc.

SNELL, Judge.

The parties to this appeal, Cyndra and Douglas Gratias, were granted a dissolution of their marriage by the District Court for Dallas County on October 23, 1985. The district court, as part of the dissolution decree, awarded the parties joint legal custody of their daughters, Kayla and Katrina, with physical custody being granted to Cyndra. Visitation rights were granted to Douglas. On the date the decree was entered, the children were nine and five years old, respectively. The district court imposed child support obligations on Douglas, divided the marital property, and held the parties responsible for their own attorney fees. Douglas brings this appeal and challenges both the district court's award of physical custody to Cyndra and certain aspects of his support obligations. Cyndra cross-appeals the decree's property division and attorney fees provisions. Cyndra seeks attorney fees associated with this appeal. Our review is de novo. Iowa R.App.P. 4. Although we are not bound by the district court's findings of fact, we give them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7).

We begin our analysis of the custody issue with the recitation of what is certainly one of the most firmly-established propositions in the jurisprudence of our state: In child custody cases, the best interests of the child is the first and governing consideration. Iowa R.App.P. 14(f)(15); *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). The general principles applicable to the custody issue are summarized in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), and *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (1974), and need not be set out at length here. In addition to the cases, we find guidance in the statutes. Iowa Code Chapter 598 (1985).

■ Douglas's contention that he should be awarded physical care of Kayla and Katrina is premised upon his claim that Cyndra has attempted to destroy the relationship which exists between him and his daughters. This attempt, argues Douglas, includes interfering with his visitation rights and speaking pejoratively of him while around the children. Douglas claims Cyndra's actions demonstrate not only that she is unwilling or unable to ensure that his daughters will have continuing contact with him, but that she affirmatively wishes to deny them that contact. Douglas maintains that, in light of Cyndra's intransigence, the case law and statutes which emphasize the importance of this contact, e.g., In re Marriage of Leyda, 355 N.W.2d 862 (Iowa 1984); Iowa Code § 598.41 (1985), mandate an award of custody to him.

It is evident from the record that on a number of occasions during the eighteen-month period between the parties' separation and the dissolution trial Cyndra, far from encouraging her daughters' relationships with their father, acted in ways detrimental to those relationships. We concur, however, with the district court's determinations that these occasions were not as frequent as Douglas implies and that most visitation periods went off without incident. We also think it unlikely that Douglas is entirely without fault as regards a number of these confrontations. The relative infrequency of Cyndra's misconduct does not provide, of course, adequate justification for such incidents. Nor are they justified because motivated by Cyndra's sense of personal hurt and her belief, supported somewhat by the record, that Douglas had been unfaithful to the marriage. Although we in no way condone actions such as those taken by Cyndra, we must consider them as only one factor among many in the determination of which parent can most effectively minister to the long-range best interests of Kayla and Katrina. See Iowa Code § 598.1(6) (1985).

The present record presents no evidence that Cyndra is an unfit parent with the exception of her feelings for Douglas. She has been primarily responsible for their daily care during their lives, and the record is devoid of any evidence that would tend to show she has been in any way negligent in providing that care. In fact, the evidence suggests that Cyndra's relationship with the children during the marriage was so encompassing that it tended to limit the relationship between Cyndra and Douglas. The custody investigator recommended that Cyndra have physical custody. Douglas was also found by both the custody investigator and the district court to be an able parent. The district court and the custody investigator expressed concern, however, with his attempts to quickly assimilate Kayla and Katrina into the family of the woman he, at the time of trial, intended to marry. There is evidence that the children were confused and unsettled about this arrangement. We note this individual did not testify at the trial. We think that Cyndra can provide the children with a stable environment and with the myriad resources required by their emotional, social, and material needs. We are not persuaded that the best interests of Kayla and Katrina require us to disturb the district court's custody award.

We hasten to point out that we do not believe the case at bar presents us with a factual situation on par with that in cases such as In re Marriage of Leyda, 355 N.W.2d 862 (Iowa 1984). In Leyda, the court was presented with an unstable custodial parent engaged in an adamant attempt to deprive a child of any meaningful relationship with the noncustodial parent. Rather, we think the present case more like In re Marriage of Weidner, 338 N.W.2d 351 (Iowa 1983), wherein the noncustodial parent's actions during an "emotionally-charged" period prior to the dissolution contributed to the problems with communication. Finally, we join with the district court in expressing a caveat to Cyndra. Our determination that the best interests of Kayla and Katrina will be served by awarding physical custody to Cyndra is a decision etched more in sandstone than in marble. Although we reaffirm our courts' position that the status of children should be quickly fixed and, thereafter, little dis-

turbed, *e.g., In re Marriage of Bowen*, 219 N.W.2d at 687, future interference by Cyndra with the development of normal, healthy relationships between Douglas and his daughters may very well serve as grounds for modification of custody. In making our decision today, we are expressly crediting the district court's determination that the parties' trial testimony manifests a willingness to make the custodial arrangement successful. Our courts are not charged with the task of ensuring that parties to a dissolved marriage remain friends. *See In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983). We are bound, however, to safeguard the best interests of the child which include the child's ability to maintain maximum continuing physical and emotional contact with the noncustodial parent. *E.g.*, Iowa Code § 598.41 (1985). Our affirmance of the district court's custodial finding today does not foreclose the issue from future reassessment.

■ Douglas presented this court on appeal with a motion addressed to conflict arising from the following introductory paragraph in the portion of the decree dealing with visitation:

> The following visitation schedule for Douglas is only a minimum; parental contact at other time as may be agreed is desirable and encouraged.

Douglas appears to believe that this provision endows him with a right to such additional visitation as he thinks appropriate. Cyndra, not surprisingly, disagrees. We think the confusion and conflict which has resulted from the presence of this provision clearly outweighs its utility. Accordingly, we modify the decree and strike this provision. In addition, we modify the decree so that Douglas's visitation on alternating weekends shall conclude at 7:00 P.M. on Sunday evening instead of at 7:30 P.M. on Monday. We believe that it is in the children's best interests that they be returned to the custodial parent at this time in order to allow preparation time for school and other weekday activities.

■ Douglas also contends that the district court erred in providing for a yearly increase in his child support payments over a two-year period. Pursuant to the decree, Douglas's support was set at $200.00 per month through August of 1986. Beginning in September 1986, the support was to increase to $225.00 per month and in September 1987, to $250.00 per month. Douglas argues that this provision impermissibly bypasses the requirement that a party seeking modification of a dissolution decree's support obligations demonstrate a material and substantial change in circumstances. *See* Iowa Code § 598.21(8) (1985). We think this argument specious. This district court, in establishing this agenda for the support payments, was expressly attempting to allow Douglas the opportunity to "restore his earnings to the level of his established capacity." We think the district court was well within its discretion in doing so and see no reason to disturb its decree in this respect. *See* Iowa Code § 598.21(4) (1985); *cf. In re Marriage of Vetternack*, 334 N.W.2d 761, 763 (Iowa 1983) (identifying trend in modification proceedings to emphasize long-range capacity to earn over short-term inability to pay).

■ In her cross-appeal, Cyndra argues briefly in favor of a modification of the property division. We find ourselves unpersuaded by her argument and affirm the district court's division. In addition, Cyndra requests that we award her attorney's fees both for the dissolution trial and for the appeal. With respect to the trial, we note that the district court is vested with considerable discretion in dealing with such requests. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct.App.1983). We cannot say the district court abused that discretion in the present case and, accordingly, affirm its determination holding each party responsible for its own fees. As to Cyndra's request for attorney's fees associated with this appeal, we think such an award is not justified by the record when evaluated under the criteria established in our cases. *See, e.g., In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa Ct.App.1981). Costs are assessed one-half to each party.

AFFIRMED AS MODIFIED.

All judges concur, except DONIELSON, P.J., and SACKETT, J., who dissent.

HAYDEN, J., takes no part.

DONIELSON, Presiding Judge (dissenting).

I respectfully dissent. I place much more emphasis on Cyndra's attitude and hateful conduct than does the majority. While the ability of the parties to communicate regarding the children's needs is only one factor to be considered under Iowa Code section 598.41(3), in the present case it is all too evident that this factor is of overriding importance. I find that Cyndra's immature and profane conduct in front of her children is indicative of her inability to promote a positive relationship between the parties' children and their father. The record reveals that Douglas has been much more flexible in his willingness to foster a good relationship between Cyndra and the children, and I would therefore award physical custody of the parties' children to Douglas.

The custody investigator testified at trial that under Doug's care the children would be afforded the maximum continuous physical and emotional contact with both parents. In her custody report, the custody investigator observed that Cyndra had demonstrated unreasonableness and rigidity in dealing with Douglas in matters related to the children and operated under an unrealistic assumption that she and the children would have little contact with Douglas. While Douglas is by no means completely absolved from his role in creating a bitter atmosphere, the record overwhelmingly shows that Cyndra is the primary cause of the total lack of communication between the parties. That Cyndra consistently vented her anger against Douglas in front of the children and attempted to bring the children into the fray evidences, I believe, a total inability on Cyndra's behalf to place the children's emotional needs above her own.

Even if I were to agree with the majority that physical custody should remain with Cyndra, I would not decrease Douglas's visitation privileges. To do so would in effect punish Douglas for Cyndra's unfortunate and unreasonable behavior. I would therefore affirm the trial court's visitation award of alternating weekends from 6:00 P.M. Friday to 7:00 P.M. Monday, or at least cut it back to 7:00 A.M. on Monday. To reduce Douglas's visitation on Sunday to 6:00 P.M., as the majority provides, in effect greatly reduces his Sunday afternoon visitation. In addition, I would grant Douglas a one-week "floating" visitation, to be exercised in Douglas's discretion and subject to notice to Cyndra of at least ten days, should Douglas's visitation be shortened by the elimination of the "at such other times...." provision.

SACKETT, J., joins this dissent.