In re the MARRIAGE OF Beverly Robin ROSENFELD and Martin Sanford Rosenfeld

Upon the Petition of Beverly Robin Rosenfeld, Petitioner–Appellee,

And Concerning Martin Sanford Rosenfeld, Respondent–Appellant.

No. 93–1618.

Court of Appeals of Iowa.

Aug. 25, 1994.

David S. Wiggins of Wiggins & Anderson, P.C., West Des Moines, for appellant.

Bernard L. Spaeth, Jr. and Megan M. Antenucci of Whitfield & Eddy, P.L.C., and

Mark McCormick of Belin Harris Lamson McCormick, P.C., Des Moines, for appellee.

Heard by SACKETT, P.J., and CADY and HUITINK, JJ.

SACKETT, Presiding Judge.

Respondent-appellant Martin Sanford Rosenfeld brings, with permission of the supreme court, an interlocutory appeal challenging a trial court's temporary order modifying the provision of his dissolution decree to transfer custody of his children, Natalie, born November 20, 1981, and Andrew, born December 27, 1987, to their mother, his former wife, petitioner-appellee Beverly Robin Rosenfeld. Martin contends Beverly has failed to meet the necessary burden for transfer of physical care, and the trial court placed too much emphasis in rendering its decision on the testimony of Dr. Rypma regarding the parental alienation syndrome. Martin contends the theory advanced by Dr. Rypma is not accepted in the field of psychology and his testimony should further be discounted because of what Martin terms an "outrageous" amount being paid for Rypma's testimony and examination of the children. We affirm as modified.

Martin and Beverly, both doctors of osteopathy, were divorced in December 1990. Physical care of the children was awarded to Martin, and Beverly was awarded reasonable visitation and ordered to pay child support of $251 per month per child. As a part of its findings in making the physical care determination, the trial court noted Beverly suffered migraine headaches and was addicted to her medication and had attempted to alienate Natalie from Martin.

Martin remarried in 1991. Beverly, since the dissolution, has obtained employment as an emergency room physician and has expanded her family practice.

In July 1992, Beverly filed an application for modification of the original decree contending there had been a substantial change in economic matters. A month later, Beverly amended her petition alleging a substantial change in circumstances as to custody of the children. After an eighteen-day hearing on the issue of child custody, the trial court

found Martin had attempted to alienate the children from Beverly; the court found Beverly's drug addiction was traced to a food allergy and she had overcome her addiction and succeeded in establishing a successful medical practice. The trial court granted Beverly physical care.

We are dealing with two well-educated, loving, and caring parents who, despite their many fine characteristics, have been unable to set aside the hostilities and animosities following the dissolution and work collectively for their children's best interests. Martin and Beverly both have much to offer their children. Their children love them both. There is evidence Martin and Beverly have both engaged in childish behavior and, clearly, they both have contributed to the discord. Both attribute outrageous behavior to the other. It is clear to us each has attempted to put circumstances in a light most favorable to them and they have allowed minor incidents to be blown out of proportion. Both parties have focused on building a case against the other.

The children will have a superior upbringing in either their mother's home or their father's home. Other than the attitude both express to the children's other parent, the evidence reveals the best of conditions are available for these children in either home.

This is not an original custody determination. The question, therefore, is not which home is better, but the question is whether Beverly has demonstrated she can offer the children superior care. *See In re Marriage of Morton,* 244 N.W.2d 819, 821 (Iowa 1976). Beverly must show an ability to minister to the child's needs superior to Martin's. *See In re Marriage of Ivins,* 308 N.W.2d 75, 78 (Iowa 1981); *Crary v. Curtis,* 199 N.W.2d 319, 320 (Iowa 1972); *In re Marriage of Gravatt,* 371 N.W.2d 836, 840 (Iowa App.1985). If both parents are found to be equally competent to minister to the children, custody should not be changed. *In re Marriage of Smith,* 491 N.W.2d 538, 541 (Iowa App.1992). We review de novo. Iowa R.App.P. 4; *In re Marriage of Feustel,* 467 N.W.2d 261, 263 (Iowa 1991). The burden for a party petitioning for a change in a dissolution is heavy, *see In re Marriage of*

*Downing,* 432 N.W.2d 692, 693 (Iowa App. 1988), because children deserve the security of knowing where they will grow up, and we recognize the trauma and uncertainty these proceedings cause all children. Custody once fixed should be disturbed only for the most cogent reasons. *See Downing,* 432 N.W.2d at 693. Beverly has the burden to show by the preponderance of evidence that conditions since the dissolution decree was entered have so materially and substantially changed that the children's best interests make it expedient to award custody to her. *See In re Marriage of Jerome,* 378 N.W.2d 302, 304 (Iowa App.1985).

The trial court spent eighteen days listening to Beverly's twenty-one witnesses, including seven by deposition, and Martin's thirty-five witnesses, including five by deposition.

After the evidence was taken, the trial judge made the following ruling and temporary order:

> Shortly after the divorce, Martin remarried. He, his wife Trudi, Natalie and Andrew all continued to live in the family home on Foster Drive in Des Moines. Beverly has not remarried and lives in a three-bedroom ranch style house in Urbandale. Martin continues in his practice as an orthopedic surgeon. Beverly is presently employed under contract as an emergency room doctor. She is a family practitioner. Both are doctors of osteopathy. Beverly is thirty-eight years of age and Martin is forty-seven.

> Two material changes in circumstances have occurred since the decree. At that time, Beverly had a warm and loving reciprocated relationship with her children then ages nine and three. The relationship now cannot be expressed as mutual. Beverly continues trying to be their mother and is devoted to them, but the conduct of the children toward their mother is appalling.

> Also, since the decree, Beverly has learned that her migraine headaches were caused by food allergies and has modified her diet and gained control over herself. She no longer uses prescription medication and has fully demonstrated a freedom from prescription medication and continues in a healthy· lifestyle.

> It is clear both parents can provide for the basic needs of the children. Both parents should be able to support each other in their respective relationships with the children, but in this case that has not happened. While Beverly, either by her nature or her desire to be a mother, may have had some isolated stresses with the children, her conduct simply cannot explain the fact that her children do and say cruel and hurtful things to her. Some of that may be explained by the emergence of a pre-teen adolescent but there simply is no way it can be rationalized on explaining the conduct of a child growing from age three to age six. These children have been turned against Beverly and it has happened by conduct from Martin's household. The only way this most unfortunate situation can be corrected is to place the children in the primary physical care of Beverly.

Following the ruling, Martin requested an interlocutory appeal and a stay of the custody change, both of which were granted.

The trial court then enlarged its findings of fact. In doing so, it found this was a case of parental alienation syndrome and it was severe. The trial court found the course of conduct of Trudi and Martin clearly fit in the pattern of the syndrome. The trial court extracted from the voluminous evidence several specific examples of what it considered conduct on the part of Trudi and Martin to alienate the children from Beverly. The first involved the prior fourth of July weekend. Beverly asked to trade holidays because she had to work a sixty-hour weekend. Martin refused to change the holiday schedule and, although he knew Beverly was working, he got Andrew up to get ready for his mother's visitation and let him sit for two hours with his bag by the window watching for his mother who did not come. When she did not come on Monday, the same scene was reenacted.

The second was an attempt to charge Beverly or someone who cared for Andrew under Beverly's direction with sexually molesting or abusing him. Trudi took Andrew to doctors four times on two separate occasions with

her complaints. All medical opinions refuted Trudi's claims but Trudi told others about them, including their Rabbi, and she made her complaints in front of Andrew.

The trial court found, and we agree, Beverly's situation and ability to be a nurturing mother has improved substantially since the dissolution. Beverly has found a reason for her headaches, has remained drug free for a substantial period, and has obtained remunerative and fulfilling employment.

Martin's situation has changed, too. Martin has remarried and his current wife, rather than nannies, assists him with the care of the children.

We recognize both parents have employment that is demanding and requires substantial periods of time away from home. Both have to utilize others to assist with child care.

There is considerable animosity between Martin's wife, Trudi, and Beverly and there appears to be little effort to smooth this relationship. We, as did the trial court, find Trudi has contributed substantially to the discord. Disagreements have extended beyond the child custody issue.

The children have seen numerous professionals and statements made to the professionals are in evidence. The children told some professionals their stepmother was mean to them but complained to others about their mother. The children are suffering while their parents are engaged in this warfare. Natalie assumes a mother's position in her relationship with Andrew and Andrew accepts it.

Nearly all experts were of the opinion the children wanted and needed to spend more time with their mother. The guardian ad litem expressed the opinion Beverly and Martin were improving their communication.

Martin complains the trial court improperly considered the parental alienation syndrome and should not have admitted in evidence treatises about the syndrome. Martin argues, and his experts have testified, the parental alienation syndrome is not a reliable theory and should not be considered by this court. Martin contends the amount spent for Dr. Rypma's testimony on the syndrome is outrageous.

We recognize there are situations where one parent will seek to put the other parent in an unfavorable light. Some cases are slight and to be expected in our less than perfect society. Some cases are serious and should not be tolerated. The Iowa courts have addressed similar complaints under other circumstances. *See In re Marriage of Udelhofen,* 444 N.W.2d 473, 474–76 (Iowa 1989); *In re Marriage of Leyda,* 355 N.W.2d 862, 865–67 (Iowa 1984); *In re Marriage of Wedemeyer,* 475 N.W.2d 657, 659–60 (Iowa App.1991); *In re Marriage of Gratias,* 406 N.W.2d 815, 817–18 (Iowa App.1987).

■ We do not pass upon the issue of whether parental alienation syndrome is a reliable theory. Rather, we look at the evidence induced and draw our own conclusion. Because this is a de novo review, we look only at the evidence we deem admissible. We consider the opinions of all the experts as we do the other testimony. We give opinion testimony the weight we consider it deserves after considering, among other things, the expert's education, experience, familiarity with case, reasons given for the opinion, and interest, if any, in the case. *See In re Marriage of Scheffert,* 492 N.W.2d 203, 205 (Iowa App.1992).

■ Our major concern focuses on Trudi. Obviously, well-intentioned, she seems to view the children as items to be secreted. She has been manipulative, forbidding Andrew to talk to his mother at school and church functions. The trial court in its findings noted the fact Trudi had alienated her three children from a prior marriage from their father after she divorced him.

Martin, too, has failed to be reasonable about Beverly's contact with the children. Beverly volunteered with the school to accompany one of the child's classes on a field trip. After Martin learned about it, he called the school and complained. He also expected Beverly to take the hours she had chaperoned the field trip as her visitation time.

We recognize the attorney for the children has recommended custody remain fixed. We give this opinion considerable weight.

In a trial this long and with this much evidence and with the concern exhibited by the trial judge who listened to all the testimony and viewed the parties, we give considerable weight to the credibility assessments made by the trial court.

We affirm the transfer of physical care to Beverly and we modify only to change the time of transfer. It shall happen after the fall semester of 1994, probably about mid-January of 1995. This will allow Martin to file a petition for further review without requesting another stay order and will allow ample time to arrange the transfer and prepare the children for it.

Beverly and Martin are responsible for their own attorney fees. Costs on appeal are taxed to Martin.

**AFFIRMED AS MODIFIED.**