# IN THE COURT OF APPEALS OF IOWA

No. 17-2044
Filed July 5, 2018

IN RE THE MARRIAGE OF MASATOMO NOBORIKAWA
AND DEIDRA DANIELLE MILLER NOBORIKAWA

Upon the Petition of
MASATOMO NOBORIKAWA,
      Petitioner-Appellee,

And Concerning
DEIDRA DANIELLE MILLER NOBORIKAWA, n/k/a DEIDRA DANIELLE MILLER,
      Respondent-Appellant.
_____

      Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.


      Deidra Miller appeals the decree dissolving her marriage to Masatomo Noborikawa. **AFFIRMED.**


      John R. Walker, Jr. of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

      Heather A. Prendergast of Roberts, Stevens & Prendergast, PLLC, Waterloo, for appellee.


      Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Deidra Miller and Masatomo (Masa) Noborikawa married in 2002. They have four children, who now range in age from five to eleven years old. Masa filed a petition seeking to dissolve the marriage in July 2016, and in December 2017, the district court entered a decree dissolving the marriage. Deidra appealed.

Because the district court hears dissolution-of-marriage proceedings in equity, our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *see also* Iowa Code § 598.3 (2016); Iowa R. App. P. 6.907. Although we examine the entire record and adjudicate the issues anew, we give weight to the district court's factual findings, especially with respect to the credibility of the witnesses. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); *see also* Iowa R. App. P. 6.904(3)(g). This is because the district court, in making its credibility assessment, has the distinct advantage of listening and observing each witness's demeanor firsthand, while we must rely on a cold transcript. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

**I. Child Custody.**

Deidra first challenges the child custody provisions of the decree. Although Deidra requested joint physical care of the children, the court found such an arrangement would not be in the children's best interests. The court instead granted physical care of the children to Masa. On appeal, Deidra again argues a joint-physical-care arrangement is best for the children.

Iowa Code section 598.41(1)(a) (2016) states:

The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

The court may grant joint physical care if the parties share joint legal custody and at least one party requests it. *See* Iowa Code § 598.41(5)(a). If the request is denied, the court must state specific findings of fact and conclusions of law as to why joint physical care is not in the child's best interests. *See id.* In determining whether joint physical care is appropriate, we consider consider "(1) stability, continuity of caregiving, and approximation; (2) 'the ability of the spouses to communicate and show mutual respect'; (3) 'the degree of conflict between parents'; and (4) 'the degree to which the parents are in general agreement about their approach to daily matters.'" *In re Marriage of Hansen*, 886 N.W.2d 868, 874 (Iowa Ct. App. 2016) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 696-99 (2007)).

In the decree, the district court determined a joint-physical-care arrangement was not in the children's best interests, citing the parties' inability to communicate effectively, the degree of conflict between them, their inability to agree on child-rearing practices, and the logistics of their current living situations. Deidra challenges these findings, claiming the district court exaggerated the level of conflict between the parties and claiming they have only "isolated disagreements" concerning child-rearing. The evidence indicates otherwise. Despite her claims that the parties are able to co-parent, the evidence shows

Deidra has undermined Masa's role as a parent, made unilateral decisions about the children, attempted to involve the children in marital conflicts, and been disrespectful to Masa in the children's presence.

Deidra argues the principle of approximation weighs strongly against granting Masa physical care of the children, claiming she was the children's primary caregiver until February 2017. Again, the record belies her claim. Rather, the record shows that historically, both parents had cared for the children. From 2013 through 2015, Masa cared for the children alone for two nights each week while Deidra taught a community college class. In 2016, Masa cared for the children for two-and-a-half months while Deidra was in India, and he has been their primary caretaker since February 2017. Although the extent to which both parents acted as caretakers to the children may support a joint-physical-care arrangement, this factor is mitigated by their inability to communicate and the degree of conflict between them. *See Hansen*, 733 N.W.2d at 697 (noting there may be circumstances that outweigh considerations of stability, continuity, and approximation in determining whether joint physical care is in the children's best interests)

Finally, Deidra argues that granting Masa physical care presents "a danger that he will seek to limit [her] time with the children." We find no evidence to support such a claim and note that Masa is bound to the visitation schedule set forth in the dissolution decree. Rather than making a custody determination based on unfounded speculation, we note that any evidence concerning a custodial parent's interference in the noncustodial parent's relationship with the children would be more appropriately addressed in a modification action. *See In re*

*Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) ("If visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such acts could provide an adequate ground for a change of custody."); *In re Marriage of Gratias*, 406 N.W.2d 815, 817-18 (Iowa Ct. App. 1987) (noting a custodial parent's future interference with the development of normal, healthy relationships between the children and noncustodial parent "may very well serve as grounds for modification of custody").

**II. Property Division.**

We next address Deidra's challenge to the district court's division of property. In determining how the parties' property should be distributed, the trial court has considerable latitude and should only be reversed if "there has been a failure to do equity." *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "The determining factor is what is fair and equitable in each circumstance." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009).

Deidra first argues the court erred in treating funds provided by Masa's father as marital debts. In 2013, his father provided them with $60,655.08 for a down payment on a home. In 2016, he provided them with an additional $10,364.00 to replace the roof on the home. Masa claims these payments were loans that requirement repayment. Deidra claims the payments were gifts and repayment was never discussed. It was the prerogative of the district court, as factfinder, to determine which evidence it believed. *See Claus v. Whyle*, 526 N.W.2d 519, 524 (Iowa 1994). The court found Masa to be more credible than Deidra. We defer to its finding in light of its superior position to resolve questions of witness credibility. *See Udelhofen*, 444 N.W.2d at 474.

Deidra also argues she should receive credit for half of the parties' 2016 income tax refund. Masa kept the entirety of the approximately $8000 refund, which he testified he used for living expenses. The district court found it was appropriate for Masa to keep the tax refund to support the children and maintain the marital home in light of the fact that Deidra had not paid any expenses for the home or child support in the ten months leading up to the dissolution. The district court's decision was equitable under the circumstances, and we do not disturb it on appeal.

Finally, Deidra argues she should receive credit for half of the amount that Masa spent on attorney fees during the dissolution proceedings, which amounted to $19,050.00, arguing it was dissipation of marital assets. Masa testified that his family provided him with the funds to pay his attorney fees. We decline to credit Deidra for one half of the funds used to pay Masa's attorney fees.

**III. Appellate Attorney Fees.**

Masa requests an award of his appellate attorney fees. Whether to make such an award is within our discretion. *See Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). It depends on three factors: (1) the needs of the party making the request, (2) the ability of the other party to pay, and (3) whether the party making the request was obligated to defend the trial court's decision on appeal. *See id.* Although Masa successfully defended the trial court's decision on appeal, in considering his needs against Deidra's ability to pay, we decline to award appellate attorney fees.

**AFFIRMED.**