# IN THE COURT OF APPEALS OF IOWA

No. 21-0364
Filed November 23, 2021

IN RE THE MARRIAGE OF TROY SCOTT JOHNSON
AND KRISTY LYNN JOHNSON n/k/a KRISTY LYNN BROWN

Upon the Petition of
**TROY SCOTT JOHNSON,**
       Petitioner-Appellee,

**And Concerning**
**KRISTY LYNN JOHNSON n/k/a KRISTY LYNN BROWN,**
       Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

The mother appeals the district court's modification of custody and physical care. **AFFIRMED AS MODIFIED AND REMANDED**.

Kodi A. Brotherson of Becker & Brotherson Law Office, Sac City and Todd E. Babich of Babich Goldman, P.C., Des Moines, for appellant.

Laura J. Lockwood of Hartung Schroeder, LLP, Des Moines, for appellee.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The parties' marriage was dissolved by a dissolution-of-marriage decree in 2012. The decree granted the parties joint legal custody of their now thirteen-year-old child and granted the mother physical care subject to the father's visitation rights. In 2018, the parties stipulated to a modification of the custodial arrangement, agreeing the mother would have sole legal custody with the same visitation schedule remaining in effect. Less than one year later, the mother filed the current modification action seeking to further reduce the father's visitation to a "therapeutic level." The father counter-petitioned. He sought modification to name him as sole legal custodian and place the child in his physical care. The child was appointed an attorney to represent her during the action. Following trial, the district court granted the parents joint legal custody of the child, placed physical care of the child with the father, and established the mother's visitation schedule.

The mother appeals. She does not challenge the return to joint legal custody, but she challenges the switch of physical care from her to the father. Both parties seek appellate attorney fees.

It is clear from the record that the parents have had a difficult time agreeing on parenting decisions since entry of the original dissolution-of-marriage decree. They have exchanged hundreds of pages of emails discussing the child's upbringing and day-to-day life. The two disagree primarily regarding the child's extracurricular activities, her doctor's appointments, and her therapy.

The record reveals that the father has made strides in his parenting since the initial dissolution decree. It also reveals that, as the child enters her teenage years, the mother is inclined toward micromanagement and control to a negative

degree, though she remains a devoted primary caregiver. Despite these differences, the record also reflects that each parent loves the child and vice versa. Even with the animosity and struggle between the parents, the child is performing exceptionally well academically and in her extracurricular activities. By all accounts, she is a happy, healthy, well-adjusted, and good kid.

## I.    Standard of Review

Modifications of physical care lie in equity. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). As such, our review is de novo. *Id.* We are not bound by the district court's findings of fact, however, we give weight to the district court's witness credibility determinations. *Id.* The controlling consideration is the best interest of the child. *Id.* Using the best-interest standard provides us with the flexibility to consider the unique circumstances of each case. *Id.*

## II.    The Child's Testimony

Before getting to the merits of the challenge to the change of physical care from the mother to the father, we will first address the mother's challenge to the child's testimony. By agreement of the parties, the child met with the judge privately to take the child's testimony. Due to COVID-19 precautions, the private meeting took place by videoconference. The only individuals on the videoconference were the judge, the child, and the court reporter. The mother asserts that the child was not placed under oath, so the child's testimony cannot be considered.

Iowa Rule of Evidence 5.603 requires witnesses to be placed under oath before testifying. The rule states: "Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty

on the witness's conscience." Iowa R. Evidence 5.603. While nothing in the rule requires the oath to be in any particular form, it must be in such a form as to impress upon the witness the obligation to testify truthfully. *Id.*; *see also* Iowa Code § 720.2 (2019); *State v. Shorter*, 945 N.W.2d 1, 11 (Iowa 2020); *State v. Hiatt*, No. 12-0555, 2013 WL 1749917, at *5 (Iowa Ct. App. Apr. 24, 2013).

Through no fault of the parties, as the parties and their attorneys were not present, the district court failed to place the child under oath before taking the child's statement.[1] At the outset, the district court stated to the child: "I want you to feel that you can be honest with me, and I promise I will be honest with you." The father asserts this statement suffices as an oath. We disagree. The court did not attempt to place the child under oath, nor did the court elaborate beyond this message to impress upon the child the need for her to testify truthfully. While the child later discussed "truth" in her discussion of her parents, at no time was an oath or affirmation prompted such that we can conclude that the child was made aware of the necessity she testify truthfully. At no time did the court impress upon the child the requirement that she testify truthfully, nor did the child provide any affirmation that she understood the requirement or that she knew what it meant to tell the truth.

Due to the failure to obtain an oath or affirmation from the child before the child gave her statement, we cannot consider her statement to be testimony. Because the child's statement was not sworn, we afford it no weight in assessing

---

[1] The record does not reveal when the parties became aware of the failure to administer an oath to the child, but there is nothing in the record suggesting the parties were aware of the mistake when they could have done anything to fix it.

the merits of this proceeding. That said, evidence of the child's preference to live with her father, including the reasons for that preference, is found sprinkled throughout the record without objection. Even if we were to consider the child's unsworn statement to the court or the other evidence of the child's preference, however, for the reasons that follow, we would still find it necessary to modify the physical-care provisions of the modification decree.

## III. Merits of Modifying Physical Care

The parent seeking a modification of custodial provisions has a heavy burden to meet. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The parent seeking a modification must establish by a preponderance of the evidence:

> that conditions since the decree was entered have so materially and substantially changed that the child[]'s best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the child[]'s well[-]being.

*Id.* The burden upon the parent seeking modification is so heavy because the law is premised on the notion that once a child's custody and physical care have been established, it should only be disturbed for the most cogent reasons. *Id.*

As this is a modification action as opposed to an original physical-care determination, we are not considering which home is better; rather, we must assess whether the father has proven by a preponderance of the evidence that he can provide superior care to the child. *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 213 (Iowa Ct. App. Aug. 25, 1994). The father must show a superior ability

to minister to the child's needs as compared to the mother. *Id.* Further, if both parents are equally competent to parent the child, custody and physical care will not be changed. *Id.*

Because we find below that the father failed to meet his burden of showing he is in a superior position to minister to the child's needs, we do not reach the merits of whether there was a change in circumstances.

On our de novo review of the record, we find the father failed to meet his burden of showing a superior ability to minister to the child's needs. It is true the father demonstrated that he is an involved, loving, and capable parent. However, we cannot find on this record that he is a superior parent to the mother. The record indicates the child has two loving and involved parents. Unfortunately, following their dissolution, the parents have been unable to fully set aside any animosity and hostilities between themselves. Despite the discord between parents, the child has two homes in which she will continue to succeed.

The district court cited to the mother's tendency toward control and efforts to alienate the child from the father as reasons the father is better suited to minister to the child's needs. We echo the district court's distaste for the mother's behavior, and we recognize the mother's behavior makes this a closer call than it otherwise would be. However, on the record before us, we cannot conclude the mother's shortcomings so outweigh her positive parenting attributes that we can declare the father to be the superior parent. Of particular importance in reaching this conclusion, we note that, by all accounts, the child is succeeding under the current physical-care arrangement. As she is growing older, she is finding her own voice, has a record of near perfect grades and attendance, and is demonstrating enviable

physical aptitude in her athletic pursuits. Based on the accounts of those individuals who testified, the child is growing to be a great person. Given the success of the current physical-care arrangement, we are not persuaded that the father is better suited to minister to the child's needs or that it would be in the child's best interests to change physical care. We are not inclined to test-run a different physical-care arrangement when the current physical-care arrangement is functioning well. *See, e.g.*, *Frederici*, 338 N.W.2d at 160 (refusing to change physical care from one parent to the other when the current arrangement has resulted in the children being "normal, well-adjusted and emotionally healthy"). As a result, we modify the district court's ruling to transfer physical care of the child back to the mother.

## IV.    Appellate Attorney Fees & Costs

Both parties request that the other be required to pay their appellate attorney fees. In determining whether we should award appellate attorney fees, we consider the needs of seeking party, the ability of the other party to pay, and the merits of the appeal. *In re Marriage of McDermott*, 827 N.W.2d 671, 686–87 (Iowa 2013). Appellate attorney fees are not a right, but rather rest in our discretion. *Id.* After consideration, we do not find either party is entitled to an award of appellate attorney fees. Each party is assessed one-half of appellate court costs.

## V.    Conclusion

As no party challenges the district court's modification order returning the parents to joint legal custody of the child and the evidence supports such an arrangement, we leave intact that portion of the district court's modification order

establishing the parents as joint legal custodians. We modify the district court's order as to physical care of the child by returning physical care to the mother.

We remand to the district court to establish the father's visitation rights; an appropriate child support obligation owed by the father after taking into account extraordinary visitation, if any; and appropriate provisions for medical care and division of responsibility for uncovered medical expenses for the child. It will be within the district court's discretion whether to make these determinations on the current record or to conduct a hearing to receive additional evidence before making the determinations. In establishing the father's visitation rights, the district court is permitted to take into account the evidence of the child's preference for additional time with her father,[2] with the district court determining the weight to give to such evidence. The district court is also permitted to impose any reasonable terms it deems appropriate to prevent the mother from imposing unreasonable limits on the child's contact with the father, unilaterally stopping visitation without a basis for doing so,[3] or otherwise interfering with the father's visitation rights.

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[2] As noted in this opinion, this evidence does not include the unsworn statements the child made to the district court. If the district court decides to conduct a hearing on remand, the child may be called as a witness on such terms as set by the district court.

[3] For example, when the COVID-19 pandemic first caused widespread response here in March 2020, a person in the large office building in which the father worked tested positive for the virus. As a result, the father's employer required its employees to work from home as a precaution. The mother unilaterally decided this meant the father had to be quarantined from seeing the child and withheld visitation for two weeks even though there was no indication that the father had been exposed to the person or any other apparent basis for her decision. During that two-week period, the mother refused to give the father phone or videoconference time with the child beyond the minimum provided in the decree.