# IN THE COURT OF APPEALS OF IOWA

No. 24-1900
Filed July 2, 2025

IN RE THE MARRIAGE OF AMANDA KAY JOHANNS
AND JARED JAMES JOHANNS

**Upon the Petition of**
**AMANDA KAY JOHANNS,**
        Petitioner-Appellee,

**And Concerning**
**JARED JAMES JOHANNS,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Worth County, Colleen Weiland,

Judge.


Jared Johanns appeals multiple provisions of the decree dissolving his

marriage to Amanda Johanns. **AFFIRMED AS MODIFIED.**



Vanessa L. Arzberger (argued) of Arzberger Law Office, Mason City, for

appellant.

Terry D. Parsons (argued) of Olsen & Parsons Law Firm, Cedar Falls, for

appellee.



Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Jared Johanns appeals multiple provisions of the decree dissolving his marriage to Amanda Johanns. He contends their child's best interests would be served by placing their child in his physical care. In the alternative, he challenges the visitation schedule and restrictions placed on his use of alcohol while the child is in his care. Jared also challenges the property division and the denial of an award of his trial attorney fees. Both parties request an award of appellate attorney fees. Following review, we affirm the provisions of the decree relating to physical care, property division, and trial attorney fees. We also affirm the default visitation schedule but modify the decree to remove a provision restricting the parties' use of alcohol while the child is in their care. Finally, we decline to award either party appellate attorney fees.

### I. Background Facts and Proceedings.

Amanda and Jared married in June 2018. They are each in their thirties and in good health. Both have doctorate degrees in physical therapy and are employed as physical therapists, earning similar incomes. They are the parents of W.M.J., born in 2020.

During the marriage, the parties lived on an acreage in Grafton that Jared bought from his mother in 2015. Jared's mother sold him the home for $165,000 and gave him $28,000 to use toward its purchase. The property's assessed value is about $137,000.

In February 2023, Amanda petitioned for a civil protective order against Jared, claiming that Jared shoved her in front of their child while intoxicated. The court found Amanda's testimony more credible than Jared's and granted the

protective order, placing the child in the parties' joint physical care. The order prohibits the parties from consuming or being under the influence of alcohol while having physical care of the child.

After the protective order was entered, Amanda and Jared separated. Amanda entered a one-year lease for a residence in Osage. In April 2023, Amanda petitioned to dissolve the parties' marriage. She relocated to Rochester, Minnesota, in August 2023 but continued to maintain the residence in Osage.

Trial was held in early 2024, and the district court entered the dissolution decree that July. The court granted the parties joint legal custody of the child and placed the child in Amanda's physical care. The court granted Jared visitation on alternating weekends and holidays, plus additional time in the summer. The decree prohibits the parties and any visitors to the home from consuming or being under the influence of alcohol or controlled substances while the child is in their care. After dividing the parties' property, the court ordered Jared to pay Amanda $14,675 to balance the equities.

**II. Scope and Standard of Review.**

We review dissolution proceedings de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact findings although they are not binding. *Id.*

**III. Discussion.**

On appeal, Jared challenges the provisions of the decree that address his contact with the child. He also challenges the division of the parties' property and the district court's denial of his request for trial attorney fees.

**A. Physical Care.**

We begin with Jared's challenge to the physical-care provisions of the decree. In determining physical care, our first and governing consideration is the best interest of the child. *See* Iowa R. App. P. 6.904(3)(o). The objective "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). In making this determination, the court considers the factors set forth in Iowa Code section 598.41(3) (2023) and those identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See Hansen*, 733 N.W.2d at 696 (stating the custodial factors in section 598.41(3) apply equally to physical-care determinations). "[T]he courts must examine each case based on the unique facts and circumstances presented to arrive at the best decision." *Id.* at 700.

In determining physical care, the district court found that both parties "have a lot to offer" and that the child is "well-bonded to each." Thus, the court found that deciding physical care "is not an easy call." But after weighing the relevant factors, the court found Amanda was better equipped to act as physical caretaker.

> The strongest factor in Amanda's favor is her history as primary caregiver. She acted as WMJ's primary provider since his birth until the parties' separation. Jared—although he loves WMJ and provided care—did not attend to the invisible load and everyday drudgery of parenting in the same way that Amanda did. And because Amanda picked up that load, Jared was able to maintain other interests and activities. Second, Jared seems to feel entitled to have his opinion count more than Amanda's and dismisses her position when they disagree. In short, he gets angry when she challenges him. Finally, while the court believes that Amanda's fear leads her to exaggerate, Jared's alcohol use is sometimes problematic. The court believes that he can control drinking when necessary to keep WMJ safe, but it has clearly interfered in his

marriage and is an important part of his social life. And sometimes when he drinks, he drinks a lot. That Jared remains in the family home and the local support he has count in his favor but do not outweigh the factors in Amanda's favor.

Jared contends he is best equipped to serve as the child's physical caretaker. He argues that the child will be harmed by being "ripped away from the close relationship with Jared and schedule the child has grown accustomed to for just under a year and a half, in the shared care of Jared and Amanda." But Jared does not request joint physical care, and such an arrangement is no longer feasible following Amanda's move to Rochester. The concerns Jared raises will affect the child no matter who has physical care.

Of the relevant factors enumerated in section 598.41(3), most weigh equally in favor of each parent. *See* Iowa Code § 598.41(3)(a) (suitability of each parent as custodian), (b) (suffering of the child based on lack of active contact with both parents), (d) (actively caring for the child since separation), (h) (geographic proximity). For example, Jared remains in Grafton, where much of his family lives. But the record also shows that Amanda has friends and family in Rochester. Jared argues that the child would benefit more from a smaller school system over a "much larger school" in Rochester, but there are advantages and disadvantages to each.

The district court's physical-care determination can be attributed to three factors. First, it found Amanda's history as the child's physical caretaker since birth weighed in her favor. Because her history shows both Amanda's capability as a parent and her ability to sustain an interest in the "everyday drudgery of parenting," we agree. Second, the court was concerned that Jared "seems to feel

entitled to have his opinion count more than Amanda's and dismisses her position when they disagree," which raises concerns regarding his ability to communicate with Amanda about the child's needs and foster the child's relationship with her. *See id.* § 598.41(3)(c), (e). Finally, while the court acknowledged that Amanda may exaggerate Jared's behavior, it noted that Jared's use of alcohol raises safety concerns.[1]

The record supports the district court's concerns. Jared presents a different view of the evidence, arguing that it shows Amanda is unable to communicate about the child's needs or foster his relationship with the child. Although there may be some basis for his concern, we give great weight to the trial court's findings. *See* Iowa R. App. P. 6.904(3)(g).

> There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (internal citation omitted).

---

[1] Jared notes that the district court did not make a finding that there was a history of domestic abuse as defined in section 236.2. *See* Iowa Code § 598.41(3)(j). But the record shows that Amanda sought and was granted a protective order under chapter 236. The allegations in Amanda's petition state that Jared was intoxicated when he shoved her, and the protective order notes that Jared admitted consuming alcohol before the altercation. The court considered Jared's alcohol use and the impact it may have on the child's safety in granting Amanda physical care. *See id.* § 598.41(3)(i) (weighing "[w]hether the safety of the child . . . will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation").

We affirm the district court's grant of physical care to Amanda with one caveat. Because our determination is premised on the belief that Amanda can communicate with Jared about the child's needs and support his relationship with the child, evidence of her inability to do so going forward may serve as a basis for modifying physical care. *See, e.g.*, *In re Marriage of Grantham*, 698 N.W.2d 140, 146 (Iowa 2005) (affirming modification of physical care when, "beginning almost immediately following the dissolution decree, [the father] has maintained a persistent pattern of conduct that served to diminish the children's relationship with their mother"); *In re Marriage of Gratias*, 406 N.W.2d 815, 817–18 (Iowa Ct. App. 1987) (affirming grant of physical care to the mother based on district court's finding that parties' testimony showed a willingness to cooperate, despite father's claim that the mother attempted to destroy the father's relationship with the children, but warning that the finding would not foreclose future reassessment if the mother interfered with the father's relationship with the children).

**B. Visitation.**

Jared next challenges the default visitation schedule set out in the decree. He asks the court to grant him extraordinary visitation as stated in his motion to enlarge or amend the decree. He argues that his "visitation should not be minimized so significantly to provide for graduated, increasing time after having successfully shared care of the child for over a year."

When the court grants physical care to one parent, it should provide liberal visitation to the other parent to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code

§ 598.41(1)(a). The visitation schedule must serve the best interests of the child. *In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009).

The district court noted the importance of allowing the child continuing physical and emotional contact with both parents and encouraged Jared and Amanda to be flexible with their parenting time, "especially as [the child] moves into his adolescent years with the attendant activities in social life." But if the parties cannot agree about parenting time, the decree provides a set schedule for Jared, providing an "every-other weekend schedule" with additional days between the school year and summer. The default schedule provides Jared weekly overnight visits from Thursday evening to Friday in addition to alternating weekend visits before the child starts kindergarten. The visitation schedule removes those weekly Thursday overnight visits to accommodate the child's school schedule once he begins kindergarten. The schedule also allows longer visits in the summer, increasing the length of those visits as the child ages.

Jared complains that he should have one other evening on alternating weekends in lieu of the weekly Thursday night visits in the weeks he does not have weekend visits because of the amount of driving involved. He also contends he should be allowed an equal amount of parenting time during the summer.

The parties only need to follow the default visitation schedule if they cannot mutually agree on an alternative. Because the default schedule provided in the decree is fair and intended to maximize Jared's contact with the child, we affirm.

### C. Restrictions on Alcohol Use.

Jared challenges the provision of the decree restricting his use of alcohol while the child is in his care. That provision states:

> Neither party may consume or be under the influence of alcohol or any unprescribed controlled substance while the children are in his or her care. Neither party may allow the use of any unprescribed controlled substance or the excessive use of alcohol by anyone visiting his or her home when the children are present.

The supreme court disapproved of a similar restriction on visitation as "demeaning" in *In re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992).

> The district court was correct in providing that Richard should not be permitted visitation with Janelle if he has been drinking excessively. We believe, however, that it is unwise to place in the court's decree any formal procedure for resolving this question or to formalize a right to abort visitations based on the subjective belief of the child. Consequently, we delete those conditions as formal provisions of the decree. If Richard behaves irresponsibly in the manner specified in the deleted conditions, his conduct may be made the subject of further proceedings in the district court and may be grounds for reduction or elimination altogether of his child visitation rights.

*Fite*, 485 N.W.2d at 664; *cf. In re Marriage of Walsh*, 451 N.W.2d 492, 493 (Iowa 1990) (rejecting requirement that father could only exercise visitation when no unrelated adult was present); *In re Marriage of Jenkins*, No. 22-0656, 2023 WL 382301, at *4 (Iowa Ct. App. Jan. 25, 2023) (eliminating language placing conditions on father's visitation concerning alcohol or substance usage); *In re Marriage of Strang*, No. 99-1402, 2001 WL 195071, at *5 (Iowa Ct. App. Feb. 28, 2001) (declining to limit visitation to times when a parent has not been drinking); *In re Marriage of Ullerich*, 367 N.W.2d 297, 299–300 (Iowa Ct.App.1985) (rejecting requirement that mother could only exercise visitation when no unrelated adult males were present). "[A] court should place conditions on a parent's visitation rights only when visitation without the placement of conditions is likely to result in direct physical harm or significant emotional harm to the child, other children, or a parent." *In re Marriage of Rykhoek*, 525 N.W.2d 1, 5 (Iowa Ct. App. 1994).

Because the district court found that Jared "can control drinking when necessary to keep WMJ safe," the restriction is unnecessary. If Jared's alcohol use endangers the child, it may justify future modification of visitation. *Id.* at 4. ("Even without formal conditions in the decree, if a parent behaves irresponsibly during visitation, his or her conduct may be grounds for reduction or elimination of visitation."). We modify the decree to remove the restriction.

### D. Property Division.

Jared contends the district court failed to equitably divide the parties' property. He claims there was $68,472.28 in home equity before he married Amanda, which he argues should not be included in the property division. When the property award is adjusted accordingly, Jared argues that Amanda should be made to pay him a property settlement of $6082.78.

The goal of property distribution is to divide the parties' property equitably based on the facts of each case rather than making an equal or percentage distribution. *See In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016). The court considers the factors set forth in Iowa Code section 598.21(5) in determining an equitable distribution. But before dividing the property, the court must identify and value the assets subject to division. *See In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). All property is subject to division, including property brought into the marriage. *See id.* The only exception is for property gifted to or inherited by one party. *See id.* But even gifted and inherited property can be divided if the court finds failing to do so would be inequitable to the other party. *In re Marriage of Miller*, 966 N.W.2d 630, 635–36 (Iowa 2021).

The district court set off $55,000 from the property division, representing two gifts Jared received from his mother: $28,000 in cash she gave Jared to buy her home and a $27,000 reduction in the home's sale price. The court declined to set aside the premarital equity Jared held in the home, noting that it is not set aside like gifted or inherited property. The court found, "To additionally set aside Jared's premarital mortgage payments when the parties increased the debt load during the marriage would unjustly ignore Amanda's financial contributions toward the mortgage and home improvements."

"Premarital property may be included in the divisible estate." *McDermott*, 827 N.W.2d at 678. But Iowa law does not credit a party for the value of the property brought into the marriage. *In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa Ct. App. 1994). "To the contrary, the property brought to the marriage by each party is only a factor to consider together with the other relevant factors in determining an equitable property division." *Id.*

Because Jared has no right to credit for the value of premarital equity, we affirm the property division set out in the dissolution decree.

**E. Trial Attorney Fees.**

Jared contends the district court abused its discretion by denying him trial attorney fees. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (citation omitted). Finding no abuse of discretion, we deny his request for trial attorney fees.

**IV. Appellate Attorney Fees.**

Both parties request an award of appellate attorney fees. Appellate attorney fees are not a matter of right. *McDermott*, 827 N.W.2d at 687. In deciding whether to award appellate attorney fees, we consider the needs of the requesting party, the ability of the other party to pay, and whether the requesting party had to defend the district court's decision on appeal. *See In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa 2016).

Because neither party has completely prevailed on appeal and they are in similar financial positions, we decline to award appellate attorney fees.

**AFFIRMED AS MODIFIED.**