**IN THE COURT OF APPEALS OF IOWA**

No. 23-0593
Filed February 7, 2024

**AUSTIN PATRICK SHEPHERD,**
     Plaintiff-Appellee,

**vs.**

**BRECK CHRISTINA BRILEY,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

     A mother appeals from an order modifying the physical-care placement of the parties' child from the mother's to the father's physical care. **AFFIRMED.**

     Robb D. Goedicke of Neighborhood Law Group of Iowa, P.C., West Des Moines, for appellant.

     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

     Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**LANGHOLZ, Judge.**

Breck Briley and Austin Shepherd have a six-year-old daughter. They were never married. So after their relationship soured when their daughter was just a few months old, Shepherd petitioned to establish paternity, set his child-support obligations, and place the child in the parties' joint physical care. *See* Iowa Code §§ 600B.7, .40 (2017). In July 2018, the district court ordered joint legal custody but placed their daughter in Briley's physical care with only visitation for Shepherd.

Things soon deteriorated further. In December 2019, Briley brought the parties back into court, seeking to modify the decree to get sole legal custody and restrict Shepherd's visitation rights. Shepherd in turn sought modification to obtain physical care himself. The litigation continued here and in other forums for the next three and a half years. It would serve little benefit to the parties or the understanding of our decision to relive the brutal legal saga with all its accusations and counteraccusations in full. But it included seven times when Briley accused Shepherd of child abuse—all determined to be unfounded by the Iowa Department of Human Services.[1] And because Briley often withheld visitation, the saga saw repeated attempts at mediation, an issuance of the writ of habeas corpus to Briley to return the child, and six contempt findings against Briley that resulted in taxation of more than twenty-three thousand dollars in attorney fees as part of the sanction.

In the end, the district court modified the decree, placing their daughter in Shepherd's physical care and granting Briley visitation rights. Briley now appeals the modification of the physical-care placement, arguing only that "the district court

---

[1] The Department is now known as the Iowa Department of Health and Human Services.

erred in finding that [Shepherd] possessed superior parenting ability warranting a change in primary physical care."[2]  (Capitalization removed.)  But on our de novo review, giving the district court's fact findings the deference they deserve, we agree that placing their daughter in Shepherd's physical care is in her best interests.

Briley also tries to challenge the attorney-fee award.  But that is not properly before us because the district court did not make a final attorney-fee award in the only order that Briley appealed.  We thus affirm the district court.  We also decline Shepherd's request for appellate attorney fees.

## I.      Physical Care

We review a district court's decision to modify the physical-care provisions of a custody order under Iowa Code chapter 600B (2019) de novo.  *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020); *see also* Iowa R. App. P. 6.907.  But we are mindful that a district court "is greatly helped in making a wise decision about the parties by listening to them and watching them in person," while we are limited to the cold, printed record and thus "denied the impression created by the demeanor of each and every witness."  *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up).  We thus give weight to a district court's fact

---

[2] Briley also makes a stray remark about her visitation rights in the conclusion section of her brief, stating in full: "Alternatively, she should be given much more liberal visitation with the minor child."  But Briley makes no specific argument or citations to legal authority or the record on that issue.  To the extent that she intended to appeal the visitation award, Briley has waived it.  *See* Iowa R. App. P. 6.903(2)(g)(3) (requiring "argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on and references to the pertinent parts of the record" and providing that "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue"); *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding that "random mention" of issue in a brief "without elaboration or supportive authority, is insufficient to raise the issue" for appellate review).

findings—especially those based on witness credibility—even though they do not bind us. *See id.*; Iowa R. App. P. 6.904(3)(g).

To modify a child's physical-care placement from one parent to the other, a party must first prove by a preponderance of the evidence that a substantial change in circumstances—more or less permanent, not originally contemplated by the court, and affecting the child's welfare—arose after entry of the decree. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). When such a change has occurred—as the district court found here—then the party seeking physical care "must prove an ability to minister more effectively to the [child's] well being" than the other parent. *Id.* This burden to show "superior"—not just equal—care is heavy. *In re Marriage of Spears*, 529 N.W.2d 299, 301–02 (Iowa Ct. App. 1994). But if modification of physical care is in the child's best interest, the burden is met. *See id.* at 302–03.

When deciding which parent can offer superior care, the "paramount consideration is the best interest of the child[]." *In re Marriage of Gravatt*, 371 N.W.2d 836, 838 (Iowa Ct. App. 1985). We are guided by the factors in Iowa Code section 598.41(3) and discussed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See* Iowa Code § 600B.40(2); *Ruden v. Peach*, 904 N.W.2d. 410, 414 (Iowa Ct. App. 2017). And we seek "to place the child[] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Briley does not challenge the district court's decision that there was a substantial change in circumstances—understandably, given that she also asked for a modification to grant her sole legal custody in the district court. She only

challenges the court's decision on the second step of the analysis that Shepherd "is a superior parent." Her argument on that point is even narrower: that the court "erroneously relied solely and exclusively upon the mistakes of" Briley in making this decision and that those "mistakes" do not show that Shepherd would be the superior parent. But her argument fails for two reasons.

First, the "mistakes" Briley refers to are relevant to the proper analysis of their daughter's best interests. Withholding visitations, making multiple false accusations of child abuse, and failing to effectively co-parent are all key evidence that Briley is incapable of supporting their daughter's relationship with Shepherd or communicating with him about their daughter's needs. These are important statutory factors in assessing the best interest of their daughter. *See* Iowa Code § 598.41(3)(e) (requiring consideration of "[w]hether each parent can support the other parent's relationship with the child"); *see also id.* § 598.41(3)(c) (requiring consideration of "[w]hether the parents can communicate with each other regarding the child's needs"). Indeed, courts are mandated to "consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." Iowa Code § 598.41(1)(c).

Because of the significance of "maintain[ing] meaningful relations with both parents," a parent's actions showing an intent to "separate" a child from the other parent, "emotionally and physically," has often been a strong basis to modify physical care from one parent to the other. *In re Marriage of Leyda*, 355 N.W.2d 862, 866–67 (Iowa 1984); *see also Gravatt*, 371 N.W.2d at 840 (relying in part on mother's contempt finding "for violating a visitation order" and her actions making

"it difficult for [the father] to exercise visitation and maintain contact with the children" in modifying physical care from the mother to the father); *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) (collecting cases). "[I]nterference with the visitation rights of the noncustodial parent" can even be the *only* basis for changing placement to the noncustodial parent—overcoming other factors like the presumption of placing half-siblings together. *Quirk-Edwards*, 509 N.W.2d at 480. The district court thus properly considered this evidence and these factors in determining the superior parent.

And second—contrary to Briley's assertion—these factors were not the only considerations of the district court in deciding which placement is in their daughter's best interest. The court summarized its reasoning for the conclusion that Shepherd "can best minister to the short-term and long-term best interests of the minor child and is the superior parent for the child" succinctly:

> While [Shepherd] is by no means perfect and has made his share of mistakes with regard to the coparenting of the parties' child, unlike [Briley], he has not acted in a manner demonstrating a propensity to engage in conduct which would potentially damage/undermine [Briley]'s relationship with the child nor has he acted in a manner demonstrating a propensity to make unilateral decisions regarding the coparenting of the parties' child in derogation of [Briley]'s rights as a joint legal custodian of the child.
>      Finally, the Court also finds that a change in the child's primary physical care would be in her best interest. Both [Shepherd]'s living situation and his employment situation are more stable than that of [Briley] and, in the Court's view, demonstrate an ability to minister to the child's needs that is superior to that of [Briley].

So while the court did base its decision in part on its findings that Briley "has on multiple occasions denied [Shepherd] his visitation rights based primarily on repeated false allegations of child abuse" and her unilateral decision-making "with

regard to the child's healthcare, counseling, and schooling," that was not all. It also considered the relative stability of the parties' home environment and ability to provide through employment. *See Winter*, 223 N.W.2d at 166 (factoring in the nature of the proposed environment and each parent's capacity to provide for the child's material needs).

Ultimately, conducting our own de novo review and giving the district court's fact findings the deference that they deserve—especially since they are based on an explicit credibility finding that Shepherd was "substantially more credible" than Briley—we agree that placement in Shepherd's physical care is in their daughter's best interest. Especially considering Briley's repeated and egregious "driving need to separate [their daughter] from her father, emotionally and physically," and the lack of any similar "plan or purpose" on Shepherd's part, Shepherd has met his heavy burden to show that he is the superior parent. *Leyda*, 355 N.W.2d at 867.

But we emphasize to both Shepherd and Briley that their daughter deserves strong, healthy relationships with both parents. *See id.* at 866. Because Shepherd has physical care, he must now work to foster those connections and not to deny them. *See* Iowa Code § 598.41(1)(c). The parties still have joint legal custody. So their daughter's long-term interests require that they *both* strive to communicate and cooperate civilly for her benefit.

## II.     Attorney Fees

Briley also argues against any award of attorney fees to Shepherd for the district court modification proceedings. *See id.* § 600B.26 (authorizing award of "reasonable attorney fees" to "the prevailing party" in a custody modification proceeding under chapter 600B). But this issue is not properly before us. Briley

only appealed the March 12, 2023 modification order. And that order did not award attorney fees to Shepherd—it merely stated the court's intent to do so and set a briefing schedule for considering the amount to be ordered at some later date. When Briley filed her notice of appeal, Shepherd had not yet even submitted his attorney fee affidavit under the court's schedule.

Briley did not file a second notice of appeal of any later order that actually awarded Shepherd attorney fees. *See* Iowa R. App. P. 6.103(2) (providing that "district court retains jurisdiction to consider an application for attorney fees" despite the filing of an appeal of the merits and that the order on such an application "is separately appealable"). We thus lack jurisdiction to review any such order. *See Iowa State Bank & Tr. Co. v. Michel*, 683 N.W.2d 95, 110 (Iowa 2004). And because the attorney-fee issue is not ripe for review in the only order before us, we cannot consider her arguments. *See id.*; *Schwickerath v. Anderson*, No. 21-1465, 2022 WL 17481857, at *10 (Iowa Ct. App. Dec. 7, 2022).

Finally, Shepherd requests appellate attorney fees. An award of appellate attorney fees is within our discretion. *Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005). "Whether such an award is warranted is determined by considering the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (cleaned up). While Shepherd had to defend the district court's decision, in light of Shepherd's greater ability to pay and the significant attorney fees already taxed to Briley because of her contempt findings, we decline to award him appellate attorney fees.

**AFFIRMED.**