In re the MARRIAGE OF James Marlin KREBSBACH and Debra Ann Krebsbach.

Upon the Petition of James Marlin Krebsbach, Petitioner-Appellant, and concerning Debra Ann Krebsbach, Respondent-Appellee.

No. 85–1684.

Court of Appeals of Iowa.

Aug. 27, 1986.

Leslie Knock of Mershon, Snow & Knock, Cedar Falls, for petitioner-appellant.

Virginia L. Lins, Legal Services Corp. of Iowa, Dubuque, for respondent-appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Petitioner appeals the trial court's denial of his application for modification of the custody provisions of the decree dissolving the parties' marriage. He contends the trial court erred in refusing to award him sole custody of the parties' three children. We affirm the trial court.

On June 29, 1983 the trial court entered its decree dissolving petitioner James and respondent Debra Krebsbach's marriage and awarded sole custody of the parties' three minor children to Debra. At that time, the trial court received evidence of each party's moral character and parental abilities. It is apparent that when the trial court made its decision to award sole custody to Debra, it was aware of her sexual

indiscretions with other men. However, the trial court also cited James' lack of emotional maturity and stability. The trial court noted that both parties have major failings concerning their abilities to minister effectively to the welfare of their children. But, despite her moral conduct, the trial court determined that awarding Debra sole custody would be in the best interests of the children. The custody decision was not appealed.

One month after the decree was entered James took the children and secretly moved to Alaska. Six months later the authorities located him and returned him to Iowa by extradition. He was charged and convicted of violating a custodial order, was ordered to pay $7,500 in restitution, and was placed on probation for five years.

In May of 1984, Debra applied for, and received, an injunction that prevented James from exercising his visitation rights while she applied for a modification of the decree to permanently supervise his visitation of the children to ensure their safety. The injunction was made permanent but was later dissolved by a trial court's order which incorporated the parties' agreement that James be restored to the visitation privileges awarded him in the dissolution decree.

In October 1984, Debra was charged with third degree sexual abuse as a result of alleged sexual relations with a 14-year-old neighbor boy. Debra pled guilty to simple assault and was placed on probation.

In February 1985, James amended his answer to Debra's application for modification to allege that the assault incident showed in her a lack of emotional stability that had a detrimental effect on her ability to properly care for the children. In addition, he alleged that the changes in her emotional stability constituted a material change in circumstances warranting a modification of the dissolution decree to transfer custody of the children to him. The trial court held, however, that the custody of the children shall remain with Debra. James appeals that decision.

Our review is de novo; we give weight to the findings of the trial court, especially those concerning credibility of witnesses, but are not bound by them. Iowa R.App. P. 4, 14(f)(7). Prior cases have little precedential value; we must base our decision primarily on the particular circumstances of the parties in this case. Our first and foremost consideration in determining custody is the best interest of the child involved. Iowa R.App. P. 14(f)(15). *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

The sole issue before us is whether the trial court erred in refusing to modify the custodial provision of the dissolution decree. To succeed in modifying the custodial provisions of a dissolution decree the moving party must carry a heavy burden. The supreme court, in *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983), stated:

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980).

We agree with the trial court that, in this case, James has failed to carry this heavy burden. James places heavy emphasis on the fact that Debra had sexual relations with a fourteen-year-old, which, according

to James, shows emotional shortcomings sufficient to allow custody to be transferred to him. He also alleges that this shows a material change in Debra's emotional stability that did not exist at the time the decree was entered.

■ We are unpersuaded that Debra's sexual encounter with this fourteen-year-old is a circumstance that is permanent, and not temporary. While we recognize that there is a great difference between sexual relationships between consenting adults, and sexual abuse with minors, the evidence showed that the children were not aware of the situation until much later. The evidence also shows that Debra is receiving counseling regarding her emotional self-image that has already shown progress.

Another requirement that must be met by James in this case is that the alleged emotional instability, not contemplated by the trial court, must relate to the welfare of the children. We again are unconvinced that Debra's emotional stability at this point has so materially changed, regarding the welfare of the children, from the time the decree was entered.

■ James has offered evidence of his living and working arrangements and plans on his mother's farm in order to show that he will be better able to minister to the children's well-being. We are encouraged at his plans to provide such an apparently wholesome environment for the children. But the record also shows that James has paid very little of his child support payments. His move to Alaska also shows an unwillingness to recognize Debra's parental right to share in the nurturing and raising of their children. The trial court, in its decree, noted James' immaturity and emotional instability when it decided to deny him custody of the children. While there is ample evidence that James intends to make the children's home life comfortable, we see no evidence that James has come to grips with his desire to take things into his own hands and deal with matters from only his perspective. The move to Alaska and the need for extradition amply support this conclusion.

When we consider each party's lack of parental abilities, we must still acknowledge today the same major problems that the trial court recognized when the decree was entered. James and Debra continue to allow their inability, or unwillingness, to get along with each other to prevent their children from having as happy and healthy childhood as possible. We see, in this case, really nothing more than two parents who are concentrating so much on their dislike for each other that they cannot see the damage being done to the lives of their children. Just like the trial court, our intent as well as our purpose in this case is to do equity. Usually, to do equity is to be as fair and impartial to either side as possible. But to do equity here, as it is in all custody matters, is to do what is equitable and best for the children. It is their welfare that is our paramount concern, as it should be the paramount concern for the parents. The children are in the custody of their mother because that is where the trial court decided would be the best place for them. We agree with that decision.

We hope the parents of these children heed both the trial court's and our concern about their behavior in this matter. They must begin realizing that an essential factor in a child's welfare is two parents who, although divorced, can set aside their individual differences to work together toward the child's happiness.

We affirm the trial court.

AFFIRMED.

OXBERGER, C.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I dissent.

While neither James nor Debra have been perfect parents, I find the sexual encounter with a 14-year-old, when coupled with other evidence, sufficient to sustain James' heavy burden. I would modify and transfer custody to him.