# IN THE COURT OF APPEALS OF IOWA

No. 24-1190
Filed June 18, 2025

**DILLAN ILMBERGER,**
     Petitioner-Appellee,

**vs.**

**SHIEGHE REINHARDT f/k/a SHIEGHE DONALD,**
     Respondent-Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, Wyatt Peterson, Judge.

A mother appeals a custody decree modification concerning her child shared with the father. **AFFIRMED.**

D. Raymond Walton of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

Chad D. Brakhahn (until withdrawal), Drew A. Powell (until withdrawal), Ryan C. Shellady (until withdrawal), and Rae M. Kinkead of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.

Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

Shieghe Reinhardt appeals from a decree modifying custody of a minor child to place physical care with the father, Dillan Ilmberger. She contests whether there was a material and substantial change in circumstances and whether Dillan demonstrated he was a superior caretaker. Both parties request appellate attorney fees. We affirm the district court's modification ruling and decline to award attorney fees.

## I.    Background Facts and Proceedings

Shieghe and Dillan were never married but share a child born in 2014. The original stipulated custody decree established joint legal custody, placed physical care with Shieghe, and granted Dillan visitation. At the time of the original decree in 2016, Shieghe and Dillan both lived in Lee County.

Soon after the stipulated decree, Dillan and Shieghe began to disagree about visitation. Dillan documented issues in a diary spanning from late 2016 through April 2017. Over several years, both parents engaged in passive-aggressive text conversations and lengthy phone calls regarding the child's education, medical care, and visitation.

Visitation scheduling for summer 2021 caused a major argument between Shieghe and Dillan, spanning multiple weeks. The same summer, while Dillan was exercising visitation, Shieghe called the police when Dillan did not provide her with the child's exact location.

Shieghe often acted in strict adherence to the terms of the custody decree. She refused to let anyone other than Dillan pick up the child. She refused to let the child attend her paternal great-grandmother's funeral when Dillan was sick,

denying both Dillan's parents' offer to take her and Dillan's request for Shieghe to take the child herself.  Shieghe seldom allowed Dillan additional visitation time, even if he requested it months in advance.  Shieghe even prevented the child—who was to be a flower girl—from attending her godfather's wedding.

Dillan petitioned to modify the original custody decree, asking the district court to grant him physical care of the child, or joint physical care in the alternative.  The court ruled against the first modification request despite noting "the evidence presented places a significant part of the blame at [Shieghe]'s feet."  The court also found Shieghe "appear[ed] to not care as much about Dillan's relationship with his child."  From the court's perspective, the biggest factor in denying modification was the lack of permanency to the change in circumstances.  Although the district court recognized the long-running visitation issues, most of the disputes were more than a year in the past.  But the district court noted further refusal from Shieghe to honor Dillan's visitation "would bolster a future claim that the conditions have become more or less permanent."

About two weeks later, Dillan moved for a second modification request after the district court's initial denial, identifying new—and worsening—issues with visitation.  Another trial was held in late 2023, centering on Shieghe's move to a different town about twenty miles away without informing Dillan.  The move resulted in the child changing school districts, which Shieghe also did not discuss with Dillan.  Shieghe asserted Dylan could "do the legwork" to stay up to date on the child's schooling and said she "do[esn't] like bothering him" about the child's medical appointments.  The district court found refusing to share this information

violated Dillan's parental rights as joint custodian.  *See* Iowa Code § 598.1(3) (2023).

Throughout both trials, the district court found Shieghe lacked credibility. Shieghe accused Dillan of buying marijuana, claimed to already have plans during the child's godfather's wedding, and said Dillan's family was unfriendly to the child because she is biracial.  In the first trial, the court found Dillan's explanation for smelling like marijuana credible and that there was "no reasonable explanation" for Shieghe denying the child's attendance at the godfather's wedding.  As for the biracial issue, the court noted it did not find Shieghe "credible in the slightest."  In the second trial, Dillan said he "missed once or twice making sure" the child took her medication but "never tried to miss" it.  And the court concluded Shieghe's accusation that Dillan withheld medication from the child was unfounded.

In the modification ruling, the district court highlighted Shieghe unilaterally moving the child and found a permanent change in circumstances not contemplated at the time of the original order.  The court also found communication between the parents had worsened, such that Shieghe now displayed a "near total disregard" for Dillan's custodial rights with "a lack of civility, decency, and extremely poor communication."  Because of both new and old issues with visitation, the court found "Shieghe ha[d] not overcome animosity towards Dillan to concentrate on the best interests of [the child]."  The district court found Dillan's career stability, ability to help facilitate a relationship between Shieghe and the child, and genuine interest in the child's education demonstrated he could provide superior care.  The court found Dillan "puts the child's best interests above his own" and placed physical care with him, subject to Shieghe's visitation.  And it noted Dillan was generally

more credible than Shieghe through his "demeanor, tone, eye contact, posture, body language, [and] overall courtroom conduct." Shieghe appeals.

## II.      Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). While we are not bound by the district court's fact-findings, we do give them weight, especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III.     Discussion

Shieghe challenges the modification of physical care, arguing no substantial change in circumstances occurred and that Dillan did not prove he could provide superior care. Shieghe and Dillan both request appellate attorney fees.

## A. Physical Care

In seeking to disturb the physical-care status quo, Dillan had to prove by a preponderance of the evidence that conditions related to parenting the child have materially and substantially changed since the stipulated custody arrangement. *See* Iowa Code § 600B.40 (applying marriage-dissolution custody and visitation provisions to children born outside of marriage); *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). To be material and substantial, changed circumstances must meet three criteria: (1) the court did not contemplate those circumstances when entering the decree; (2) the changes are more or less permanent rather than temporary; and (3) the changed circumstances relate to the welfare of the child. *See Frederici*, 338 N.W.2d at 158. Additionally, to warrant

modification, the parent seeking to change custody bears the burden to prove a superior ability to care for the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Frederici*, 338 N.W.2d at 158.

Shieghe attacks the district court's reliance on her unilateral move with the child in making its determination of a permanent, substantial change in circumstances. In doing so, she conflates the tie-breaker right of having the "final say concerning where the [child's] home will be" with a right to relocate the child without any discussion with the noncustodial parent. *See Hoffman*, 867 N.W.2d at 33 (cleaned up). The custodial parent moving with the child is "the kind of decision the other joint custodian has a right to be consulted about." *Id.* at 32 (citation omitted). Shieghe moved without notice to Dillan, which is considered "adverse to her position," and the district court correctly considered this conduct when finding a substantial change in circumstances. *See In re Marriage of Mayfield*, 577 N.W.2d 872, 874 (Iowa Ct. App. 1998).

We have also previously held that withholding important medical information and making unilateral medical decisions can establish a substantial change in circumstances. *See In re Marriage of Downing*, 432 N.W.2d 692, 694 (Iowa Ct. App. 1988). Shieghe ignored Dillan's requests for a bare minimum of information about the child's doctor appointments. The district court also found Shieghe lacked a credible explanation for refusing to provide this information. On the other hand, Dillan showed a willingness to take the child to appointments during his limited

visitation time. Shieghe's continued refusal to share medical information supports a substantial change in circumstances. *See id.*

Shieghe contends most cases where this court found a substantial change in circumstances involved more severe or harmful conduct perpetrated by the custodial parent. *See, e.g.*, *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 214–15 (Iowa Ct. App. 1994) (disapproving of parental alienation). But Shieghe ignores frequent communications from Dillan regarding the child and makes visitation difficult for him. *See In re Marriage of Grabill*, 414 N.W.2d 852, 853 (Iowa Ct. App. 1987). Although Shieghe's actions are arguably less drastic than parents in other cases, "[i]f visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such acts could provide an adequate ground for a change of custody." *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). Shieghe's less than credible reasons for continually interfering with Dillan's visitation rights support the district court's finding of a substantial change in circumstances. *See id.* And, in any event, custody decisions are necessarily fact-bound, and Shieghe's comparison-shopping attempt to show her conduct was not as bad as others' does not persuade us. *See In re Marriage of Krebsbach*, 395 N.W.2d 189, 190 (Iowa Ct. App. 1986) ("Prior cases have little precedential value; we must base our decision primarily on the particular circumstances of the parties in this [child-custody] case."). Nor are we persuaded that separating the child at issue from here from Shieghe's other child overpowers the good and compelling considerations supporting modification. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981) ("The rule [related to separating siblings] is not ironclad, however,

and circumstances may arise which demonstrate that separation may better promote the long-range interests of children.").

Shieghe also argues many qualities the district court attributed to Dillan apply equally to her, including her ability to provide medical care, education, and stability. In physical-care determinations, Iowa Code section 598.41(3) enumerates factors to consider the custody arrangement in the "best interest of [a] minor child." Two relevant factors here include "[w]hether the parents can communicate with each other regarding the child's needs" and "[w]hether each parent can support the other parent's relationship with the child." Iowa Code § 598.41(3)(c), (e). Shieghe's actions, including denying Dillan's visitation and severely restricting the child's time with extended family, tend to suggest Dillan can provide superior care. As does Dillan's willingness to foster the child's relationship with Shieghe and his attempts to resolve their disputes.

Shieghe's final argument rests on her role as the child's primary caregiver for eight years. *See In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa Ct. App. 1995) (discussing the role of primary caretaker). "While we afford some weight to the parent who historically acted as the primary caregiver, this factor is not dispositive." *Eviglo v. Bedia*, No. 22-2108, 2023 WL 4530263, at *2 (Iowa Ct. App. July 13, 2023). The district court found Dillan's willingness to accommodate the child's best interests—even at the cost of his career and salary—outweighed Shieghe's historical role as primary caregiver. We agree.

We recognize both parents have stable home lives and the necessary resources to provide for the child. But in our de novo review, we largely agree with the district court's assessment and discern no basis for reversal.

**B. Appellate Attorney Fees**

Last, both Shieghe and Dillan seek appellate attorney fees to the tune of $6750 and $12,500 respectively. In a custody modification action, the court may award reasonable attorney fees to the prevailing party. Iowa Code § 600B.26. Shieghe did not prevail, so she cannot be awarded attorney fees. As for Dillan, "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017). Dillan has adequate financial resources to pay his attorney fees. Having considered the relevant factors, we decline to award any appellate attorney fees.

**AFFIRMED.**